**UNITED STATES of America**

v.

**Frank A. LIBERTO, Defendant.**

**Crim. No. 87–0100–LFO.**

United States District Court,
District of Columbia.

May 22, 1987.

Joseph E. diGenova, U.S. Atty., Betty Ann Soiefer, Asst. U.S. Atty., Washington, D.C., for U.S.

William A. Swisher, Towson, Md., for Liberto.

## MEMORANDUM AND ORDER

OBERDORFER, District Judge.

This matter is before the Court on defendant's motions to suppress testimonial and physical evidence. An evidentiary hearing was held on May 18, 1987.

### I.

Defendant aroused the suspicions of an experienced AMTRAK drug enforcement agent in Washington, D.C. who observed on a train manifest that one F. White had, on February 24, 1987, bought for cash from AMTRAK's Hollywood, Florida ticket office a one-way ticket and reserved a roomette for passage on the next day from Fort Lauderdale, Florida to New York City, giving no call-back number or address where he could be located in the event of cancellation or other untoward event. The agent identified this form of ticket transaction as characteristic of those made by drug couriers operating between South Florida and the Northeast corridor. When the train arrived in Washington, D.C. at about 3:50 P.M. on February 26, defendant was sitting in his roomette, with the door open and a one foot gap between the two halves of curtain which separated the roomette door from the aisle of the railroad car. Responding to the agent's suspicion, the agent and three police officers, one of whom was handling a dog trained and experienced in the detection of narcotics, entered the railroad car occupied by defendant while it was standing in Union Station in Washington, D.C. The dog, Max 25, had correctly identified narcotics 95% of the times he had had an opportunity to do so. The dog and handler proceeded down the aisle. When the dog came to the defendant's roomette, it twice lunged through the opening of the curtain only to be pulled back by its handler. When the dog lunged a third time, the handler failed to restrain it and it jumped onto the seat in the roomette and sniffed in the direction of defendant's suitcase which was on a rack about six feet above the floor of the roomette. One of the officers approached the entrance to the compartment, showed the defendant his credentials and asked if the

defendant had a ticket. Mr. Liberto displayed a ticket in the name of F. White. When asked if he had any identification, the defendant acknowledged that all of his identification was in the name of Frank Liberto. The officer then asked defendant if he could search the room and the suitcase which had attracted the attention of the dog. Defendant consented. The officer took the suitcase down and opened it. Inside the open suitcase the officer observed two shopping bags which were partly obscured by a layer of clothing. The bags were folded, but the bag openings were not otherwise secured. The officer unfolded one bag, reached inside and removed a package in the shape and the consistency of a brick wrapped in gummed tape. Removal of the tape revealed a white powder, later identified by test as cocaine.[1] Thereupon, the officers arrested defendant. While the one officer was inside the roomette examining the bag, he called to the officers in the aisle outside the roomette that he had found something. An officer in the aisle responded, "What did you find, marijuana?" Whereupon defendant blurted out, "No, its coke."

## II.

Defendant moves to suppress all of this evidence because it was seized in a search without a warrant. Ruling on the motion requires a determination of (1) whether the officer's use, without a warrant, of a trained dog in the corridor of the train and in defendant's sleeping compartment constituted an unlawful search; (2) whether, once inside the roomette, the officers were justified in searching the suitcase and its contents.

It has now been established that the use of trained dogs to examine suspicious luggage in airports or bus terminals is not a "search" under the fourth amendment.

See United States v. Place, 462 U.S. 696, 707–09, 103 S.Ct. 2637, 2644—46, 77 L.Ed.2d 110 (1983); United States v. Fulero, 498 F.2d 748 (D.C.Cir.1974). And the use of such dogs to determine if a trailer contains contraband has been upheld despite the absence of probable cause or a search warrant. See United States v. Solis, 536 F.2d 880 (9th Cir.1976).[2] However, the Second Circuit has recently held that a dog sniff in the corridor outside a residential apartment is a "search" requiring a warrant based on probable cause. See United States v. Thomas, 757 F.2d 1359 (2d Cir.1985). The Thomas court relied primarily on the "heightened privacy interest that an individual has in his dwelling place." Id. at 1366.

Defendant argues that the Thomas holding should be extended to a roomette on a train. It is true that a passenger traveling in a sleeper compartment has a greater expectation of privacy than a passenger who merely purchases a seat in an ordinary train car.[3] But this expectation is not akin to that of a person in his home. The travel of passengers by railroad has always been subject to pervasive government regulation. Cf. California v. Carney, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). Moreover, passengers in sleeper compartments are subject to inquiry and oversight by the conductors and other railroad employees. And, in this case, the defendant's own behavior, in leaving the compartment door open and the curtains parted, suggested that he was not relying on any increased expectation of privacy afforded by a separate compartment.

Accordingly, the use of a police dog in the public corridor of the train to corroborate independent suspicion of narcotics trafficking does not constitute an unreasonable search in violation of the fourth amendment. And once Max had

1. A later search of the suitcase revealed a white piece of paper bearing the name "Frank White," reservation # 413175, room # 4.

2. It is unclear whether the Solis court rested its holding on a determination that a dog sniff is not a "search" or on a finding that any search was "reasonable" under the circumstances.

3. It is not necessary to consider whether a passenger who purchases a ticket for a sleeper compartment primarily or exclusively to avoid detection of illegal drugs is entitled to a lesser expectation of privacy than a passenger who purchases the car primarily as sleeping accommodations but who is also carrying such drugs.

"alerted" to the narcotics in the defendant's suitcase, it can not be denied that the officers had probable cause to believe that the luggage contained illicit drugs. *See United States v. Fulero*, 498 F.2d 748 (D.C. Cir.1974); *United States v. Watson*, 551 F.Supp. 1123 (D.D.C.1982). However, defendant also argues that the officers should have obtained a warrant before entering the compartment or searching the luggage. This suggestion is not realistic in light of the circumstances confronting the officers. There was testimony at the hearing that the train had stopped in Washington to change engines. It is doubtful that a warrant could have been obtained in this jurisdiction before the train departed. And even if the officers had wired ahead to another jurisdiction and had obtained a warrant there, the defendant might well have left the train at an earlier stop. Under these circumstances, the officers' entry into the compartment without a warrant was entirely reasonable. *See United States v. Johnston*, 497 F.2d 397, 398 (9th Cir.1974).

Finally, defendant suggests that the consent to the search of his luggage was not lawfully obtained. However, he has presented no testimony to suggest that his consent was involuntary or coerced and the testimony of the officers supported no such inference. Instead, the defendant argues only that the consent was the product of an unlawful search. Since the Court has already determined that the officers' actions were reasonable, defendant's consent to the search of his luggage was valid.

### III.

Defendant has also moved to suppress his statements to the officers about the contents of his suitcase. The testimony at the hearing demonstrated that Mr. Liberto's admission that the packages contained "coke" was a spontaneous exclamation in response to a question directed from one officer to another. It was not the product of "interrogation" by the officers and it is therefore admissible despite the fact that Mr. Liberto had not yet been read any *Miranda* warnings. *See Rhode Island v. Innis*, 446 U.S. 291, 302–04, 100 S.Ct.

1682, 1690–91, 64 L.Ed.2d 297 (1980). Likewise, there is no basis for excluding Mr. Liberto's statement to his son, after he was arrested and read his rights, that "they caught me with some bad stuff."

Accordingly, it is this 2nd day of May, 1987, hereby

ORDERED: that the defendant's Motion to Suppress Evidence and Motion to Suppress Statements should be, and are hereby, DENIED; and it is further

ORDERED: that there shall be a status call in this case on June 1, 1987 at 9:00 A.M.