Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/05/2023 08:06 AM CDT

State of Nebraska, appellee, v.
John Vaughn, appellant.
___ N.W.2d ___

Filed May 5, 2023.    No. S-22-308.

1. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** When reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.

2. **Motions to Suppress: Confessions: Constitutional Law: Appeal and Error.** In reviewing a motion to suppress a confession based on the claimed involuntariness of the statement, an appellate court applies a two-part standard of review. With regard to historical facts, an appellate court reviews the trial court's findings for clear error. Whether those facts suffice to meet the constitutional standards, however, is a question of law, which an appellate court reviews independently of the trial court's determination.

3. **Rules of Evidence: Hearsay: Appeal and Error.** Apart from rulings under the residual hearsay exception, an appellate court reviews for clear error the factual findings underpinning a trial court's hearsay ruling and reviews de novo the court's ultimate determination to admit evidence over a hearsay objection or exclude evidence on hearsay grounds.

4. **Constitutional Law: Witnesses: Appeal and Error.** An appellate court reviews de novo a trial court's determination of the protections afforded by the Confrontation Clause and reviews the underlying factual determinations for clear error.

5. **Motions for Mistrial: Appeal and Error.** An appellate court will not disturb a trial court's decision whether to grant a motion for mistrial unless the trial court has abused its discretion.

6. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.

7. **Judges: Words and Phrases.** A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition.

8. **Constitutional Law: Search and Seizure.** Both the Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution guarantee against unreasonable searches and seizures.

9. **Search and Seizure: Warrantless Searches.** Searches without a valid warrant are per se unreasonable, subject only to a few specifically established and well-delineated exceptions.

10. **Warrantless Searches.** The warrantless search exceptions that Nebraska has recognized include: (1) searches undertaken with consent, (2) searches under exigent circumstances, (3) inventory searches, (4) searches of evidence in plain view, and (5) searches incident to a valid arrest.

11. **Warrantless Searches: Motor Vehicles.** Nebraska has recognized that among the established exceptions to the warrant requirement is the automobile exception.

12. **Search and Seizure: Warrantless Searches: Probable Cause: Motor Vehicles.** The automobile exception to the warrant requirement applies when a vehicle is readily mobile and there is probable cause to believe that contraband or evidence of a crime will be found in the vehicle.

13. **Probable Cause: Police Officers and Sheriffs: Motor Vehicles.** Probable cause may result from any of the senses, and an officer is entitled to rely on his or her sense of smell in determining whether contraband is present in a vehicle.

14. **Search and Seizure: Warrantless Searches: Probable Cause: Police Officers and Sheriffs: Motor Vehicles.** When an officer with sufficient training and experience detects the odor of marijuana emanating from a vehicle that is readily mobile, the odor alone furnishes probable cause to suspect contraband will be found in the vehicle and the vehicle may be lawfully searched under the automobile exception to the warrant requirement.

15. **Constitutional Law: Miranda Rights: Self-Incrimination.** *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), prohibits the use of statements derived during custodial interrogation

unless the prosecution demonstrates the use of procedural safeguards that are effective to secure the privilege against self-incrimination.

16. **Miranda Rights: Police Officers and Sheriffs: Words and Phrases.** Under the *Miranda* rule, a "custodial interrogation" takes place when questioning is initiated by law enforcement after a person has been taken into custody or is otherwise deprived of his or her freedom of action in any significant way.

17. **Miranda Rights.** The ultimate inquiry for determining whether a person is "in custody" for purposes of *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.

18. **Pretrial Procedure: Pleadings: Evidence: Juries: Appeal and Error.** A motion in limine is a procedural step to prevent prejudicial evidence from reaching the jury. It is not the office of a motion in limine to obtain a final ruling upon the ultimate admissibility of the evidence. Therefore, when a court overrules a motion in limine to exclude evidence, the movant must object when the particular evidence is offered at trial in order to predicate error before an appellate court.

19. **Pretrial Procedure: Pleadings: Appeal and Error.** An appellant who has assigned only that the trial court erred in denying a motion in limine has not triggered appellate review of the evidentiary ruling at trial.

20. **Hearsay: Words and Phrases.** Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

21. **Hearsay.** An out-of-court statement is not hearsay if the proponent offers it for a purpose other than proving the truth of the matter asserted.

22. **Criminal Law: Motions for Mistrial.** A mistrial is properly granted in a criminal case where an event occurs during the course of trial which is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial.

23. **Motions for Mistrial: Proof: Appeal and Error.** To prove error predicated on the failure to grant a mistrial, the defendant must prove that the alleged error actually prejudiced him or her, rather than creating only the possibility of prejudice.

24. **Sentences: Appeal and Error.** When sentences imposed within statutory limits are alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering well-established factors and any applicable legal principles.

25. **Sentences.** When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and

experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime.

26. ____. The sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

Appeal from the District Court for Douglas County: PETER C. BATAILLON, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and Rebekah S. Keller for appellant.

Douglas J. Peterson, Attorney General, and Matthew Lewis for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

FUNKE, J.

## I. INTRODUCTION

In this direct appeal, John Vaughn challenges his convictions and sentences in the district court for Douglas County, Nebraska, for possession with intent to distribute marijuana and failure to affix a tax stamp. Vaughn contends that the district court should have suppressed evidence of marijuana found when law enforcement conducted a warrantless search of a duffelbag and a suitcase on an Amtrak train, as well as statements that Vaughn made to law enforcement. He also contends that the district court should not have allowed testimony at trial about an Amtrak employee's statement that Vaughn owned the duffelbag or about apparent marijuana that was not chemically tested and found to contain "Delta-9-tetrahydrocannabinol" (THC).[1] In addition, Vaughn contends

---

[1] See Neb. Rev. Stat. § 28-401 (Cum. Supp. 2022).

that the district court should have granted a mistrial because of the admission of hearsay regarding his ownership of the duffelbag and that his sentence of imprisonment was excessive. We affirm.

## II. BACKGROUND

Vaughn was a passenger on an Amtrak train traveling from Emeryville, California, to Chicago, Illinois, on February 4, 2021. At approximately 4:50 a.m., Vaughn's train made a scheduled stop in Omaha, Nebraska. Such stops generally last approximately 10 to 15 minutes. In 2021, the U.S. Drug Enforcement Administration had an agreement with Amtrak to search trains stopped in Omaha for "indicators of drug trafficking or drug distribution." One of those indicators was "unmarked luggage," or luggage without tags or identification.

While searching Vaughn's train, Brian Miller, a Pottawattamie County, Iowa, sheriff's deputy assigned to a Drug Enforcement Administration drug interdiction task force, observed an unmarked duffelbag on a luggage rack near room No. 12 (Room 12). Miller smelled the "seam" or "zipper portion" at the top of the duffelbag and detected the odor of marijuana. He opened the duffelbag and saw several sealed packages that appeared to contain marijuana. He asked an Amtrak employee who owned the duffelbag. According to Miller, the Amtrak employee said that the duffelbag belonged to the man in Room 12.

Miller knocked on the door of Room 12, and Vaughn answered. Vaughn had been asleep and was on his bed. Miller claims that he did not enter the doorway, but instead stood in the hall "[t]o the side of the doorway," facing the train's exit. Miller also claims that Vaughn consented to speak with him and admitted to owning the duffelbag and the contents of Room 12. However, Vaughn claims that he told Miller he did not own or recognize the duffelbag.

Vaughn was arrested and taken into the Amtrak terminal. Miller and Drug Enforcement Administration agent Daniel

Pelster then searched Room 12 and found a hard-sided suitcase. In the suitcase, they discovered additional sealed packages apparently containing marijuana. Vaughn claims that the suitcase found in Room 12 was not his and that he had never seen the suitcase before.

The State of Nebraska charged Vaughn with (1) possession with intent to distribute marijuana; (2) possession of marijuana, more than 1 pound; and (3) failure to affix a tax stamp.

### 1. Motion to Suppress

Prior to trial, Vaughn moved to suppress the evidence of marijuana found in the search of the duffelbag and the suitcase, as well as his statements to law enforcement. Miller was the sole witness at the hearing on that motion. Miller testified that marijuana has a distinct odor, which he recognizes based on his training and experience. He also testified that he detected the odor of marijuana when he smelled the seam of the duffelbag. Miller stated that he did not "manipulate" the bag before detecting that odor, although he did subsequently move the bag. According to Miller, he "conducted a probable cause [search]" of the bag and discovered approximately 17 pounds of marijuana. Miller admitted that he did not inform Vaughn that Vaughn did not have to talk to him and was free to leave. However, Miller testified that Vaughn was free to leave. Miller also testified that he and Pelster "conducted a probable cause search" of Room 12 and found a suitcase with approximately 37 pounds of marijuana.

Following Miller's testimony, Vaughn argued that the marijuana found in the luggage should be suppressed because "[t]here is no probable cause exception to the Fourth Amendment." Vaughn argued that under *United States v. Place*,[2] law enforcement cannot just search a bag if there is probable cause or a reasonable articulable suspicion of criminal activity; instead, officers need to seize the property and

---

[2] *United States v. Place*, 462 U.S. 696, 103 S. Ct. 2637, 77 L. Ed. 2d 110 (1983).

request a warrant. Vaughn similarly argued that his statements to law enforcement should be suppressed, because a reasonable person would not have believed that he or she was free to leave the train or refuse questioning, especially because the train was briefly stopped in Omaha and Vaughn was en route to Chicago. The State disagreed.

The district court rejected Vaughn's arguments. As to the evidence of marijuana, the district court found that "the officer had the ability to smell the bag." The court also found that officers have probable cause to search a bag if they "smell[] the odor of marijuana coming from the zipper." Likewise, the court found that Vaughn was not in custody until he was arrested and that "[t]here was no reason to give him [his] Miranda rights" until then. Specifically, the court found that Miller was "at the side of the door" and that Vaughn was free to leave.

Vaughn subsequently preserved the issues raised in his motion to suppress by objecting to the admission at trial of evidence of the marijuana found in the duffelbag and the suitcase and of his statements to law enforcement.

## 2. Motion in Limine to Exclude Evidence Not Chemically Tested

Thereafter, Vaughn filed a motion in limine to prohibit any evidence or testimony at trial regarding apparent marijuana found in the suitcase that was not subjected to chemical testing by the Douglas County sheriff's office. The suitcase contained 15 plastic bags, only 3 of whose contents were chemically tested; the results of those tests indicated the presence of THC. The contents of the other 12 bags were merely examined visually and resealed.

Vaughn argued that evidence or testimony regarding the contents of the 12 bags that were not chemically tested was irrelevant and more prejudicial than probative. The district court disagreed, instead finding that the contents of the 12 untested bags included "evidence of the narrative of the allegations against [Vaughn]." The court observed that those 12

bags were "packaged similarly and were in the [suitcase]" allegedly in Vaughn's possession and "can be regarded as indicia of the crimes alleged."

### 3. Motion in Limine to Exclude Amtrak Employee's Statements

Vaughn subsequently made another motion in limine to preclude Miller from testifying that an Amtrak employee told him that Vaughn owned the duffelbag found on the luggage rack near Room 12. Vaughn argued that the testimony was hearsay; that it was more prejudicial than probative, because it related to ownership of the bag where the marijuana was found; and that it violated the Confrontation Clause. Vaughn stated that if the district court overruled his objection, he "assume[d]" it would make a "strong limiting instruction for the jury," but he did not "think that a limiting instruction would go far enough."

The State disagreed, arguing that the statement was not hearsay, because it was offered to prove its impact on the listener, instead of its truth. The State argued that the Amtrak employee's statement about the bag's owner was important to Miller's story, because otherwise there was no apparent reason for Miller to go to Room 12. The district court agreed with the State that the statement was not hearsay and overruled Vaughn's motion. The court declined to decide about a limiting instruction at that time. However, the court subsequently instructed the jury as to what constitutes hearsay and indicated that it was allowing the Amtrak employee's statement, because that statement was not offered to prove the truth of the matter asserted.

### 4. Jury Trial and Sentencing

A jury trial was held at which the State presented testimony from Miller, Pelster, and a forensic chemist with the Douglas County sheriff's office. Vaughn testified in his own behalf. The testimony of all four witnesses as relevant to this appeal is briefly summarized below.

Miller testified that Vaughn appeared "calm" when Vaughn opened the door and that Miller had a "consensual encounter" with Vaughn in which Vaughn said that he had flown to California 2 days earlier. Pelster testified that he was 15 to 20 feet away during that encounter, but could not hear the conversation or see Vaughn at that time. Pelster also testified that he subsequently saw Vaughn leave Room 12 and that no one else was present in or left the room. Miller and Pelster both opined that it was significant that Vaughn flew to California and returned shortly thereafter by train. Both also opined that the quantity of marijuana suggested that the marijuana was for distribution, because there was more than one person could use before it "depreciate[d]." According to both Miller and Pelster, persons with marijuana for personal use generally have less than 1 pound of the drug; they also generally have rolling papers, pipes, or other paraphernalia.

The forensic chemist testified that both the duffelbag and the suitcase contained multiple sealed black plastic bags, each of which, in turn, contained a clear plastic bag "tied in a knot with a green botanical substance within it." She also testified that the contents of all the plastic bags in the duffelbag and of three of the plastic bags in the suitcase were chemically tested and found to contain greater than 1 percent of THC.

Thereafter, Vaughn testified in his own behalf that he had taken a train to California and spent 2 weeks there, "do[ing] music" and visiting his girlfriend. He also testified that during his encounter with Miller, Miller was "hovering over [him] because the bed's so low," and that they would have been "face to face, [really] close," if Vaughn stood up. Vaughn suggested that "people [were] trying to set [him] up" and that he "was targeted, because of [his] appearance." Vaughn observed that he was "young and black," was "on a sleeper car," and has visible tattoos.

The jury found Vaughn guilty of possession with intent to distribute marijuana; possession of marijuana, more than 1

pound; and failure to affix a tax stamp. However, the district court sustained Vaughn's motion to dismiss the charge of possession of more than 1 pound on double jeopardy grounds. Subsequently, after a sentencing hearing described in more detail later in this opinion, the court sentenced Vaughn to 4 to 6 years' imprisonment for the drug offense and a fine of $10,000 for the tax stamp offense.

Vaughn appeals his convictions and sentences. We moved the matter to our docket on our own motion.

## III. ASSIGNMENTS OF ERROR

Vaughn assigns, restated, that (1) the district court erred when it denied his motion to suppress physical evidence and his statements to law enforcement, (2) the district court erred in overruling his motion in limine to "prevent the admission of hearsay statements at trial" and abused its discretion by (a) permitting the admission of hearsay and (b) permitting the admission of hearsay in violation of the Confrontation Clause, (3) the district court's failure to grant his request for a mistrial based on the admission of hearsay constituted a miscarriage of justice, (4) the district court abused its discretion when it denied his motion in limine and permitted the admission of evidence and testimony regarding the apparent marijuana that was not chemically tested, and (5) the district court abused its discretion by imposing an excessive sentence of imprisonment.

## IV. STANDARD OF REVIEW

[1,2] When reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review.[3] Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a

---

[3] *State v. Albarenga*, 313 Neb. 72, 982 N.W.2d 799 (2022).

question of law that an appellate court reviews independently of the trial court's determination.[4] An appellate court applies a similar two-part standard of review when reviewing a motion to suppress a confession based on the claimed involuntariness of the statement, reviewing the trial court's findings with regard to historical facts for clear error and independently reviewing the trial court's determination as to whether those facts suffice to meet constitutional standards.[5]

[3] Apart from rulings under the residual hearsay exception, an appellate court reviews for clear error the factual findings underpinning a trial court's hearsay ruling and reviews de novo the court's ultimate determination to admit evidence over a hearsay objection or exclude evidence on hearsay grounds.[6]

[4] An appellate court reviews de novo a trial court's determination of the protections afforded by the Confrontation Clause and reviews the underlying factual determinations for clear error.[7]

[5-7] An appellate court will not disturb a trial court's decision whether to grant a motion for mistrial unless the trial court has abused its discretion.[8] An appellate court similarly reviews a sentence imposed within the statutory limits for abuse of discretion by the trial court.[9] A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition.[10]

---

[4] *Id.*

[5] *State v. Weichman*, 292 Neb. 227, 871 N.W.2d 768 (2015).

[6] *Elbert v. Young*, 312 Neb. 58, 977 N.W.2d 892 (2022).

[7] *State v. Comacho*, 309 Neb. 494, 960 N.W.2d 739 (2021).

[8] *State v. Trail*, 312 Neb. 843, 981 N.W.2d 269 (2022).

[9] *State v. Abligo*, 312 Neb. 74, 978 N.W.2d 42 (2022).

[10] *Mackiewicz v. Mackiewicz*, 313 Neb. 281, 984 N.W.2d 253 (2023).

## V. ANALYSIS

### 1. Overruling Vaughn's
### Motion to Suppress

In his first assignment of error, Vaughn contends that the district court erred in overruling his motion to suppress the physical evidence obtained from the search of the duffelbag and his statements to law enforcement on the train. We address Vaughn's arguments as to the physical evidence first, before turning to his statements to law enforcement.

#### (a) Evidence From Search of Duffelbag

Vaughn argues that the district court erred in finding that "an officer's sniff of a bag and subsequent warrantless search of that bag" did not violate his rights under the U.S. and Nebraska Constitutions.[11] We disagree.

[8-12] Both the Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution guarantee against unreasonable searches and seizures.[12] Searches without a valid warrant are per se unreasonable, subject only to a few specifically established and well-delineated exceptions.[13] The warrantless search exceptions that Nebraska has recognized include: (1) searches undertaken with consent, (2) searches under exigent circumstances, (3) inventory searches, (4) searches of evidence in plain view, and (5) searches incident to a valid arrest.[14] We have also recognized that among the established exceptions to the warrant requirement is the automobile exception.[15] The automobile exception to the warrant requirement applies when a vehicle is readily mobile

---

[11] Brief for appellant at 17.

[12] *State v. Miller*, 312 Neb. 17, 978 N.W.2d 19 (2022).

[13] *Id*.

[14] *State v. Saitta*, 306 Neb. 499, 945 N.W.2d 888 (2020).

[15] *Id.*

and there is probable cause to believe that contraband or evidence of a crime will be found in the vehicle.[16]

[13] Probable cause to search requires that the known facts and circumstances are sufficient to warrant a person of reasonable prudence in the belief that contraband or evidence of a crime will be found.[17] Probable cause may result from any of the senses, and an officer is entitled to rely on his or her sense of smell in determining whether contraband is present in a vehicle.[18]

[14] In *State v. Seckinger*,[19] we reaffirmed that when an officer with sufficient training and experience detects the odor of marijuana emanating from a vehicle that is readily mobile, the odor alone furnishes probable cause to suspect contraband will be found in the vehicle and the vehicle may be lawfully searched under the automobile exception to the warrant requirement. Further, both the U.S. Supreme Court and this court have "relied on the automobile exception to a search warrant requirement in upholding searches of containers found during a probable cause search of a vehicle" within which law enforcement has probable cause to believe contraband or evidence is contained.[20] Containers include packages or luggage within the vehicle which might reasonably hold the item for which law enforcement has probable cause to search.[21]

Some courts use the term "vehicle exception," rather than "automobile exception," in recognition of the fact that the

---

[16] *State v. Lang*, 305 Neb. 726, 942 N.W.2d 388 (2020).

[17] *Id*.

[18] *State v. Seckinger*, 301 Neb. 963, 920 N.W.2d 842 (2018).

[19] *Id*.

[20] *State v. Konfrst*, 251 Neb. 214, 230-31, 556 N.W.2d 250, 262 (1996) (citing *California v. Acevedo*, 500 U.S. 565, 111 S. Ct. 1982, 114 L. Ed. 2d 619 (1991), and *State v. McGuire*, 218 Neb. 511, 357 N.W.2d 192 (1984)).

[21] See *id.*

exception extends to more than just automobiles.[22] Other courts have applied the automobile exception to common carriers, such as buses and trains, on the grounds that those modes of transportation are like automobiles in that they are mobile and involve a reduced expectation of privacy.[23] For example, in *State v. Lovely*,[24] the Idaho Court of Appeals rejected the argument that the suitcases of the defendant—a passenger on a Greyhound bus bound from Oregon to Minnesota— were unreasonably searched after law enforcement detected a "strong odor of marijuana" emanating from the suitcases when the bus made a scheduled stop in Idaho. The defendant did not dispute that there was probable cause to search her suitcases.[25] Instead, she argued that the automobile exception's doctrinal basis in mobility and reduced expectations of privacy "does not apply to a commercial bus."[26]

The court disagreed, finding that the "exigency created by mobility" is not lessened because a passenger is not in control of the bus or because the bus has a predetermined route.[27] The court also observed the pervasive regulation of vehicles capable of traveling on public highways.[28] Accordingly, the court concluded that insofar as there was probable cause to search the defendant's suitcases due to the odor of

---

[22] See, e.g., *Brown v. State*, 653 N.E.2d 77 (Ind. 1995); *State v. Leveye*, 796 S.W.2d 948 (Tenn. 1990); *State v. Ramirez*, 121 Idaho 319, 824 P.2d 894 (Idaho App. 1991).

[23] See, e.g., *U.S. v. Tartaglia*, 864 F.2d 837 (D.C. Cir. 1989) (train); *United States v. Pina*, 648 Fed. Appx. 899 (11th Cir. 2016) (bus); *Green v. State*, 334 Ark. 484, 978 S.W.2d 300 (1998) (bus); *Symes v. U.S.*, 633 A.2d 51 (D.C. 1993) (train); *State v. Lovely*, 159 Idaho 675, 365 P.3d 431 (Idaho App. 2016) (bus); *Alvarez v. Com.*, 24 Va. App. 768, 485 S.E.2d 646 (1997) (bus).

[24] *Lovely, supra* note 23, 159 Idaho at 676, 365 P.3d at 432.

[25] *Lovely, supra* note 23.

[26] *Id*. at 677, 365 P.3d at 433.

[27] *Id*. at 678, 365 P.3d at 434.

[28] *Id*.

marijuana, a warrantless search of the suitcases was permitted under the automobile exception.[29]

We find that reasoning persuasive here. Miller was in a public area on the train when he noticed the unmarked duffelbag and sniffed it. Miller testified that he had training and experience in detecting the odor of marijuana and that he smelled the odor of marijuana emanating from the duffelbag. That smell gave Miller probable cause to suspect contraband would be found in the duffelbag. Had Vaughn been in a readily mobile automobile,[30] a warrantless search of the car and the duffelbag would have been permitted pursuant to the automobile exception under *Seckinger* and related cases. We see no reason for a different outcome here because Vaughn used a different mode of transportation, particularly because the Amtrak train from Emeryville to Chicago generally remains in Omaha for only 10 to 15 minutes before departing for other states.[31]

Vaughn does not allege that Miller physically manipulated the duffelbag prior to detecting the odor of marijuana,[32] and

---

[29] *Id.*

[30] See *Seckinger, supra* note 18 (vehicle readily mobile whenever not located on private property and capable or apparently capable of being driven on roads or highways).

[31] See, e.g., *United States v. Johnston*, 497 F.2d 397, 398, 399 (9th Cir. 1974) (law enforcement officer "not required to assume that Defendant would stay on the train with the marijuana in the suitcases all the way to New York City," because defendant could "depart with the suitcases at some stop along the way" or hand them over "at some intermediate point to an accomplice"); *U.S. v. Liberto*, 660 F. Supp. 889, 892 (D.D.C. 1987) (upholding warrantless search of train passenger's suitcase; if law enforcement officers wired ahead to another jurisdiction to obtain warrant, they risk situation where "defendant might well have left the train at an earlier stop"), *affirmed without opinion*, 838 F.2d 571 (D.C. Cir. 1988).

[32] Compare *Bond v. United States*, 529 U.S. 334, 120 S. Ct. 1462, 146 L. Ed. 2d 365 (2000) (officer's physical manipulation of bus passenger's carry-on luggage violated Fourth Amendment).

his reliance on *Place*[33] is misplaced. Focusing on the fact that luggage is involved, Vaughn seeks to rely on language in *Place* which he apparently construes to mean that law enforcement must always seize luggage and obtain a warrant before searching it. However, as the U.S. Supreme Court observed in *California v. Acevedo*,[34] *Place* concerned the "temporary detention of luggage in an airport"; it "had nothing to do with the automobile exception."

### (b) Vaughn's Statements to
### Law Enforcement

Vaughn similarly argues that his statements to law enforcement allegedly admitting ownership of the duffelbag and suitcase should be suppressed because he was not advised of his rights under *Miranda v. Arizona*[35] prior to making those statements.

[15-17] *Miranda* prohibits the use of statements derived during custodial interrogation unless the prosecution demonstrates the use of procedural safeguards that are effective to secure the privilege against self-incrimination.[36] The safeguards provided by *Miranda* """"come into play whenever a person in custody is subjected to either express questioning or its functional equivalent.""""[37] Under the *Miranda* rule, a "custodial interrogation" takes place when questioning is initiated by law enforcement after a person has been taken into custody or is otherwise deprived of his or her freedom of action in any significant way.[38] Both the U.S. Supreme Court and this court have emphasized that "the ultimate inquiry for determining

---

[33] *Place, supra* note 2.

[34] *Acevedo, supra* note 20, 500 U.S. at 577, 578.

[35] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[36] *State v. Connelly*, 307 Neb. 495, 949 N.W.2d 519 (2020).

[37] *Id*. at 505, 949 N.W.2d at 527.

[38] *Id*.

whether a person is 'in custody' for purposes of *Miranda* '"is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest."'"[39] We view these two articulations as synonymous.

The term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.[40]

Vaughn's argument apparently concerns the "custody" prong of the *Miranda* rule. Specifically, Vaughn argues that a reasonable person in his situation would not have believed that he or she was free to leave, because "the train was temporarily stopped in Omaha while Vaughn was en route to Chicago" and he would have been "isolated" in an "unknown" city, "unaware of where to go," if he left the train.[41] Vaughn also seemingly suggests that the time and place of his conversation with Miller were inherently coercive. He observes that Miller woke him up at 5 a.m. and that he was in a "closed compartment" with Miller "partially block[ing] the doorway."[42] Those arguments are without merit.

Vaughn was on a train when he spoke with Miller. As such, his setting was no different than other transportation settings where the U.S. Supreme Court has found that a custodial interrogation or an unreasonable seizure does not necessarily result even though a reasonable person would not feel free to leave. Notably, in *Berkemer v. McCarty*,[43] the Court acknowledged that "few motorists would feel free . . . to leave the

---

[39] *State v. Montoya*, 304 Neb. 96, 109, 933 N.W.2d 558, 571-72 (2019) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004)).

[40] *Connelly, supra* note 36.

[41] Brief for appellant at 19, 20.

[42] *Id*. at 20.

[43] *Berkemer v. McCarty*, 468 U.S. 420, 436, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984).

scene of a traffic stop without being told they might do so." Nonetheless, it rejected the suggestion that any roadside questioning of a person detained pursuant to a routine traffic stop constitutes custodial interrogation within the scope of *Miranda*.[44] In so doing, the Court observed two features of traffic stops which mitigate the danger that the person questioned would be induced "'to speak where he would not otherwise do so freely.'"[45]

First, detention pursuant to a traffic stop is "presumptively temporary and brief."[46] Second, the circumstances of the typical traffic stop are not such that the person detained feels "completely at the mercy of the police"; the typical traffic stop is at least somewhat public, and the person detained typically confronts at most one or two officers.[47] Accordingly, the Court reasoned that an ordinary traffic stop is "substantially less 'police dominated'" than the kinds of interrogation at issue in *Miranda*.[48]

Similarly, in *Florida v. Bostick*,[49] the U.S. Supreme Court observed that a passenger on a bus scheduled to depart would not feel free to leave, but nonetheless rejected the defendant's claim that he was unreasonably seized in violation of the Fourth Amendment. The defendant in *Bostick* argued that police encounters are "much more intimidating" in the "cramped confines of a bus," because police "tower" over seated passengers and there is "little room to move."[50] He also argued that a "reasonable bus passenger" would not have

---

[44] *Berkemer, supra* note 43.

[45] *Id*., 468 U.S. at 437 (quoting *Miranda, supra* note 35).

[46] *Id*.

[47] *Id*., 468 U.S. at 438.

[48] *Id*., 468 U.S. at 439.

[49] *Florida v. Bostick*, 501 U.S. 429, 111 S. Ct. 2382, 115 L. Ed. 2d 389 (1991).

[50] *Id*., 501 U.S. at 435.

felt free to leave, "because there is nowhere to go on a bus" and the bus was about to depart.[51]

The Court disagreed, finding that the "mere fact that [the defendant] did not feel free to leave the bus does not mean that the police seized him."[52] Instead, the Court observed, the defendant would not have felt free to leave in any case, because his bus was scheduled to depart.[53] The Court similarly observed that the defendant's movements were confined as a "natural result" of being on the bus; it did not necessarily reflect whether or not the police conduct was coercive.[54] As a result, the Court concluded that the appropriate inquiry in such settings was not whether a reasonable person would feel free to leave, but "whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter."[55]

In light of *Berkemer*, *Bostick*, and related cases, we reject Vaughn's suggestion that he was necessarily in custody for purposes of *Miranda*, even assuming that a reasonable person would not have felt free to leave a train (or a cabin on a train) briefly stopped in Omaha. Other factors indicate that Vaughn was not in custody.

Previously, in *State v. Rogers*,[56] we noted the "large body of case law . . . developed since *Miranda*" which has made apparent "certain circumstances that are most relevant to the custody inquiry." Those circumstances include: (1) the location of the interrogation and whether it was a place where the defendant would normally feel free to leave; (2) whether the contact with the police was initiated by them or by the person interrogated, and, if by the police, whether the

---

[51] *Id.*

[52] *Id.*, 501 U.S. at 436.

[53] *Id.*

[54] *Id.*

[55] *Id.*

[56] *State v. Rogers*, 277 Neb. 37, 57, 760 N.W.2d 35, 54 (2009).

defendant voluntarily agreed to the interview; (3) whether the defendant was told he or she was free to terminate the interview and leave at any time; (4) whether there were restrictions on the defendant's freedom of movement during the interrogation; (5) whether neutral parties were present at any time during the interrogation; (6) the duration of the interrogation; (7) whether the police verbally dominated the questioning, were aggressive, were confrontational, were accusatory, threatened the defendant, or used other interrogation techniques to pressure the suspect; and (8) whether the police manifested to the defendant a belief that the defendant was culpable and that they had the evidence to prove it.[57]

Applying those factors here, it is true that Miller initiated contact with Vaughn and never told Vaughn that he was free to terminate the interview or leave. However, Miller was in a public area on the train when he knocked on Vaughn's door, and he remained there throughout his conversation with Vaughn. Vaughn was in his own room. It is unclear whether Miller partially blocked the doorway. Vaughn asserts in his brief on appeal that Miller did so. However, Miller testified at trial that he did not. The room was small, but Vaughn does not allege that Miller purported to impose any restrictions on his freedom of movement within or outside of his room.

Miller testified that Vaughn agreed to speak with him, and the exchange between them on the train prior to Vaughn's arrest was relatively brief. Only two law enforcement officers were present at the time of that exchange, and one of those officers may have been outside Vaughn's view. There is no indication that law enforcement verbally dominated the questioning; were aggressive, confrontational, or accusatory; threatened Vaughn; or used other interrogation techniques to pressure him. Nor is there any indication that law enforcement manifested to Vaughn a belief that he was culpable and that they had the evidence to prove it. Miller apparently

---

[57] *Rogers, supra* note 56.

asked Vaughn about his travel plans, the luggage in his room, and whether he owned the duffelbag, and then Miller arrested him. Accordingly, we find that Vaughn was not subject to custodial interrogation prior to his arrest.

## 2. Admission of Amtrak Employee's Statement

Next, Vaughn assigns multiple errors related to Miller's testimony about the Amtrak employee's statement that Vaughn owned the duffelbag. We begin with his argument that the district court erred in overruling his motion in limine to exclude that testimony.

### (a) Overruling Vaughn's Motion in Limine

[18] A motion in limine is a procedural step to prevent prejudicial evidence from reaching the jury.[58] It is not the office of a motion in limine to obtain a final ruling upon the ultimate admissibility of the evidence.[59] Therefore, when a court overrules a motion in limine to exclude evidence, the movant must object when the particular evidence is offered at trial in order to predicate error before an appellate court.[60]

[19] The record on appeal indicates that Vaughan objected at trial when the State offered Miller's testimony about the Amtrak employee's statement. Vaughn also apparently assigns, restated, that the district court erred in permitting such hearsay to be admitted at trial and permitting hearsay in violation of the Confrontation Clause. Accordingly, we discuss those assignments of error below. In contrast, an appellant who has assigned only that the trial court erred in denying a motion in limine has not triggered appellate review of the evidentiary ruling at trial.[61]

---

[58] *State v. Ferrin*, 305 Neb. 762, 942 N.W.2d 404 (2020).

[59] *Id*.

[60] *Id*.

[61] *Id*.

### (b) Permitting Alleged Hearsay to
### Be Admitted Into Evidence

Vaughn argues that the district court erred by "permitting the admission of hearsay statements from an unnamed Amtrak employee" that Vaughn owned the duffelbag.[62] Vaughn objected to Miller's testimony about that statement at trial on hearsay grounds, but his objection was overruled. The State counters that the statement was "not definitional hearsay in the context provided."[63] We agree with the State.

[20,21] Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.[64] Hearsay is not admissible unless otherwise provided for in the Nebraska Evidence Rules or elsewhere.[65] However, by definition, an out-of-court statement is not hearsay if the proponent offers it for a purpose other than proving the truth of the matter asserted.[66] Thus, statements are not hearsay to the extent that they are offered for context and coherence of other admissible statements, and not for "the truth or the truth of the matter asserted."[67] Similarly, statements are not hearsay if the proponent offers them to show their impact on the listener, and the listener's knowledge, belief, response, or state of mind after hearing the statement is relevant to an issue in the case.[68]

Here, the State offered Miller's testimony about the Amtrak employee's statement for context and coherence and to show the statement's impact on Miller. Miller had previously testified that he observed a duffelbag without luggage tags, sniffed it, and detected the odor of marijuana. And Miller

---

[62] Brief for appellant at 21.

[63] Brief for appellee at 35.

[64] *Elbert, supra* note 6.

[65] *Id.*

[66] *Id.*

[67] *State v. Wood*, 310 Neb. 391, 428, 966 N.W.2d 825, 854 (2021).

[68] *Elbert, supra* note 6.

subsequently testified that he knocked on the door of Room 12, introduced himself to Vaughn, and asked Vaughn whether Vaughn owned the duffelbag. Miller's testimony that he asked an Amtrak employee who owned the duffelbag, and was told that it belonged to the man in Room 12, bridged those statements. Specifically, it showed why Miller went to Room 12 to ask questions about the duffelbag and encountered Vaughn. Additionally, out of an abundance of caution, the trial court instructed the jury that the testimony as to what the Amtrak employee said was being admitted not to prove the truth of the matter asserted, but to give information as to why Miller went to Room 12. As such, the district court did not err in admitting the challenged testimony about the Amtrak employee's statement over Vaughn's hearsay objections.

Vaughn also argues on appeal that the Amtrak employee's statement was more prejudicial than probative, because it "directly related" to possession of the marijuana, an element of the crime charged.[69] Vaughn sought to exclude, and objected at trial to, Miller's testimony about the Amtrak employee's statement on that basis, among others. However, he does not assign that the district court erred in failing to find that the testimony was more prejudicial than probative.[70] Also, as we explain below, the testimony was not unfairly prejudicial insofar as it was cumulative of other evidence of ownership.

### (c) Inability to Confront Amtrak Employee

Vaughn further argues that allowing the admission of hearsay regarding his ownership of the duffelbag violated his rights under the Confrontation Clause. Specifically, he argues that the Amtrak employee's statement was testimonial, because

---

[69] Brief for appellant at 21.

[70] *State v. Miranda*, 313 Neb. 358, 984 N.W.2d 261 (2023) (alleged error must be both specifically assigned and specifically argued in brief of party asserting error to be considered by appellate court).

the employee was "in the train car near the time that Miller searched the [duffelbag]" and "likely would have known that the conversation with Miller was for an investigation."[71] That argument is without merit.

As we have previously stated, the Amtrak employee's statement was not hearsay, because it was not offered to prove the truth of the matter asserted. Accordingly, we need not reach the issue of whether that statement is testimonial. "A statement that is not hearsay raises no Confrontation Clause concerns,"[72] and the Confrontation Clause does not "bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."[73]

Moreover, although we find no error in admitting the statement, the record in this case demonstrates that even if it was error, the error was harmless. Vaughn maintains that the State's evidence that he possessed marijuana was "weak" without Miller's testimony about the Amtrak employee's statement.[74] However, there was testimony and evidence that the contents of the duffelbag were similar in their packaging and nature to the contents of the suitcase that Miller and Pelster claimed to have found in Vaughn's room.

Specifically, the forensic chemist with the Douglas County sheriff's office testified that the duffelbag and the suitcase both contained multiple heat-sealed black plastic bags, each of which, in turn, contained a clear plastic bag "tied in a knot with a green botanical substance within it." Exhibits 10-A through 10-K and 12-A through 12-P illustrated the

---

[71] Brief for appellant at 23.

[72] *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999) (en banc). See, also, *Swain v. State*, 2015 Ark. 132, 459 S.W.3d 283 (2015); *Dednam v. State*, 360 Ark. 240, 200 S.W.3d 875 (2005); *Hodges v. Com.*, 272 Va. 418, 634 S.E.2d 680 (2006).

[73] *Crawford v. Washington*, 541 U.S. 36, 60 n.9, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

[74] Brief for appellant at 25.

similarities in packaging. And exhibit 5 also indicated the similarities in packaging, as well as the similarities in contents of the plastic bags whose contents were chemically tested.

In addition, Miller testified that Vaughn admitted during their encounter on the train that Vaughn owned the duffelbag. Even if Miller had not been allowed to testify as to why he went to Room 12 and encountered Vaughn, Miller would still have testified that Vaughn acknowledged ownership of the duffelbag and suitcase. Also, Pelster testified similarly that he and Miller found the suitcase in Room 12 after Vaughn's arrest and that he saw no one else present in or exiting Room 12.

Accordingly, Miller's testimony about the Amtrak employee's statement was cumulative of other evidence that Vaughn possessed marijuana. Thus, even if the Amtrak employee's statement was erroneously admitted at trial, the guilty verdicts were surely unattributable to that evidence.[75] Any error in admitting the statement was harmless beyond a reasonable doubt.[76]

### (d) Not Granting Vaughn's
### Motion for Mistrial

In addition, Vaughn argues that the district court erred by denying his motion for a mistrial. Vaughn asked the district court to grant a mistrial after the admission of testimony from Miller about the Amtrak employee's statement that the duffelbag on the luggage rack outside Vaughn's cabin belonged to Vaughn. The district court overruled that motion, finding that the statement was not hearsay. We cannot say the district court abused its discretion in denying Vaughn's request for a mistrial based on the admission of that testimony.

[22,23] A mistrial is properly granted in a criminal case where an event occurs during the course of trial which is

---

[75] Cf. *State v. Kidder*, 299 Neb. 232, 908 N.W.2d 1 (2018).

[76] *Id.*

of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial.[77] A defendant faces a higher threshold than merely showing a possibility of prejudice when attempting to prove error predicated on the failure to grant a mistrial.[78] The defendant must prove that the alleged error actually prejudiced him or her, rather than creating only the possibility of prejudice.[79]

Vaughn argues that a mistrial was warranted because Miller's testimony about the Amtrak employee's statement was hearsay and, as such, should not have been admitted into evidence. Vaughn also argues that Miller's testimony about the Amtrak employee's statement violated the Confrontation Clause and was more prejudicial than probative.

However, as we have previously discussed, Vaughn cannot show that Miller's statement was improperly admitted. The statement was not hearsay and raises no Confrontation Clause concerns. Moreover, Vaughn does not assign on appeal that the district court erred in finding that the testimony was not more prejudicial than probative.

### 3. Admission of Evidence
### Not Chemically Tested

Vaughn further assigns that the district court abused its discretion when it denied his motion in limine to exclude evidence and testimony regarding the marijuana that was not chemically tested and "permitted the admission of untested marijuana into evidence."[80] If that assignment of error were construed to concern only the district court's ruling on the motion in limine, there is nothing for us to review. As we previously noted, an appellant who assigns only that the trial court erred

---

[77] *Trail, supra* note 8.

[78] *Id.*

[79] *Id.*

[80] Brief for appellant at 26.

in denying a motion in limine has not triggered appellate review of the evidentiary ruling at trial.[81] However, even if Vaughn's assignment of error here is construed to concern the district court's decision overruling his objections at trial to the evidence and testimony about the apparent marijuana that was not chemically tested, it would still be without merit; we cannot say that the district court abused its discretion in admitting that evidence and testimony.

Vaughn argues that the evidence was not relevant. However, as the trial court observed in its ruling on the motion in limine, the 12 plastic bags apparently containing marijuana whose contents were not chemically tested were described as containing "green botanical substance[s]" and were found in the suitcase with, and "packaged similarly" to, the 3 plastic bags whose contents were chemically tested and found to have THC. As such, they could be seen as relevant to the overall "narrative of the allegations" against Vaughn, as the district court found.

Vaughn also argues that the evidence and testimony were more prejudicial than probative, particularly in light of Pelster's testimony that the "the sheer amount of marijuana that was found, specifically 40 to 50 pounds . . . , demonstrated an intent to distribute," because it was unlikely to be consumed by an individual "before it went bad."[82] However, Vaughn did not assign that the district court erred in overruling his objection at trial to the evidence and testimony on the grounds that they were more prejudicial than probative. Further, Vaughn acknowledges that only approximately 13.5 pounds of apparent marijuana were not chemically tested. Over 30 pounds were chemically tested and found to have greater than 1 percent of TCH. And Miller and Pelster both testified that persons with marijuana for personal use generally have, at most, 1 pound. Miller and Pelster also testified that persons with

---

[81] *Ferrin, supra* note 58.

[82] Brief for appellant at 27.

marijuana for personal use generally have rolling papers, pipes, or other paraphernalia, none of which appear to have been in evidence in the present case.

### 4. Excessive Sentence
### of Imprisonment

As his final assignment of error, Vaughn claims that his sentence of 4 to 6 years' imprisonment for possession with intent to distribute marijuana was excessive for an offense that has no mandatory minimum sentence. Specifically, Vaughn argues that his sentence was "primarily based on the nature of the offense" and did not "adequately account" for mitigating factors, including his ties to his family, his plans for further education, and his experience growing up "surrounded by the enticing allure of hip-hop culture."[83] However, Vaughn does not dispute that his sentence was within the statutory range for a Class IIA felony.[84]

[24-26] When sentences imposed within statutory limits are alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering well-established factors and any applicable legal principles.[85] When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime.[86] However, the sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's

---

[83] *Id.* at 30.

[84] See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2022).

[85] *State v. Greer*, 312 Neb. 351, 979 N.W.2d 101 (2022).

[86] *Id*.

observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.[87]

In the present case, the district court ordered a presentence investigation that detailed the factors the court was to consider when imposing a sentence. Additionally, the court noted that it had reviewed the presentence investigation in advance of the sentencing hearing. Vaughan's presentence investigation indicated that he scored in the very high risk level for procriminal attitude/orientation and in the high risk level for criminal history, education/employment, and companions.

Prior to pronouncing Vaughan's sentence, the court did observe that Vaughn "had over 50 pounds" of marijuana when he was arrested. However, the court's comments prior to sentencing also touched on two of the primary mitigating factors noted by Vaughn; namely, his close relationships with his family, especially his grandmother, and his plans for further education. Moreover, immediately prior to the court's statements, Vaughn and his counsel both made statements to the court emphasizing Vaughn's close family relationships and educational plans when requesting a term of probation or, alternatively, a sentence of time served. For example, Vaughn's counsel stated that the presentence investigation report indicated that Vaughn was a "caregiver" for his "ailing grandmother" and that his "family support system" was one of his "greatest strengths." Counsel also stated that Vaughn planned to go back to school. Vaughn then detailed his plans to transfer from a petroleum engineering program in Louisiana to a music program in Georgia. He also explained that he planned to obtain a commercial driver's license to support himself and his family while in school.

On the other hand, the district court observed that Vaughn was charged with possession of "some small amounts of drugs" in Maryland, allegedly while the present case was pending. That circumstance could be seen to undercut Vaughn's

---

[87] *Id.*

claim that his denial of "having any issue with alcohol or drug use" was a mitigating factor.[88] More important, the district court found Vaughn less than credible, including in his statements about his family and education. The district court told Vaughn that "[he is] a hard man to believe," apparently because of the difficulty in reconciling his claims about his closeness to and care for his family in Georgia with his conduct elsewhere. Accordingly, we cannot say that the district court abused the "very wide discretion"[89] accorded to it when sentencing Vaughn to 4 to 6 years' imprisonment for possession with intent to distribute marijuana.

## VI. CONCLUSION

For the foregoing reasons, we find no merit to Vaughn's assignments of error. Accordingly, we affirm the judgment of the district court.

Affirmed.

---

[88] Brief for appellant at 31.

[89] *State v. Rogers*, 297 Neb. 265, 275, 899 N.W.2d 626, 634 (2017).