Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/22/2023 08:17 AM CDT

State of Nebraska, appellee, v.
Julena J. Reznicek, appellant.
___ N.W.2d ___

Filed September 22, 2023.    No. S-22-798.

1. **Rules of Evidence: Hearsay: Appeal and Error.** Apart from rulings under the residual hearsay exception, an appellate court reviews for clear error the factual findings underpinning a trial court's hearsay ruling and reviews de novo the court's ultimate determination to admit evidence over a hearsay objection or exclude evidence on hearsay grounds.

2. **Hearsay: Words and Phrases.** Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

3. **Rules of Evidence: Hearsay: Words and Phrases.** For purposes of the hearsay rule, a statement is (a) an oral or written assertion or (b) nonverbal conduct of a person, if it is intended by him or her as an assertion.

4. **Rules of Evidence: Hearsay.** Hearsay is not admissible unless otherwise provided for in the Nebraska Evidence Rules or elsewhere.

5. **Rules of Evidence.** When a Nebraska Evidence Rule is substantially similar to a corresponding federal rule of evidence, Nebraska courts will look to federal decisions interpreting the corresponding federal rule for guidance in construing the Nebraska rule.

6. **Rules of Evidence: Hearsay.** For a statement to be admissible under Neb. Rev. Stat. § 27-803(1) (Cum. Supp. 2022) three requirements must be met: (1) The declarant must have personally perceived the event or condition described, (2) the declaration must be an explanation or description of the event or condition, and (3) the declaration must be substantially contemporaneous with the event or condition described.

7. **Hearsay: Time.** When determining whether a declaration and an event or condition are substantially contemporaneous, a trial court should consider whether sufficient time elapsed to have permitted reflective thought.

Appeal from the District Court for Douglas County: W. Russell Bowie III, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and Alexander D. Sycher for appellant.

Michael T. Hilgers, Attorney General, Erin E. Tangeman, and Braden Dvorak, Senior Certified Law Student, for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Stacy, J.

After a bench trial in county court, Julena J. Reznicek was found guilty of misdemeanor shoplifting and sentenced to a $100 fine. She appealed to the district court, which affirmed. Reznicek now appeals to this court, challenging the admission of certain testimony over her hearsay objection and arguing there was insufficient evidence to sustain her conviction. We affirm.

## BACKGROUND

On October 8, 2021, Reznicek was charged in Douglas County Court with theft by shoplifting ($0 to $500), first offense, a Class II misdemeanor, in violation of Neb. Rev. Stat. §§ 28-511.01 and 28-518(4) (Reissue 2016). The charge related to events occurring July 16, 2021, at a department store in Omaha, Nebraska. The following evidence was adduced at a bench trial held in May 2022.

### Trial Evidence

In July 2021, Tyler Tietz was employed by the department store as a loss prevention department manager, and his duties included investigating suspected theft. On the evening of July 16, Tietz was watching live surveillance camera footage of shoppers in the store. He observed Reznicek, who was carrying a large purse, "fairly quickly" select nine pairs of

women's shorts and carry them to a fitting room. Tietz testified the shorts had a value of more than $1 and less than $500.

The security cameras show the hallway of the fitting room area, but there are no cameras inside the fitting rooms. While Reznicek was inside a fitting room, Tietz contacted Megan Krumme, a department store manager who was working in the area and whose duties included assisting with loss prevention. Tietz alerted Krumme to a possible theft and provided a description of the individual and the items to be looking for. Reznicek was the only customer in the fitting rooms at the time, and Krumme waited in the hallway of the fitting room area for Reznicek to leave.

Tietz continued to watch on the live security camera and, after several minutes, saw Reznicek leave the fitting room area carrying only four or five pairs of shorts. Tietz then saw Krumme enter and leave the fitting room used by Reznicek. Meanwhile, Tietz watched as Reznicek placed the shorts she was carrying back on clothing racks in the store and headed toward the store's exit.

Krumme testified that "immediately" after she saw Reznicek leave the fitting room, she checked it for merchandise. She then used either a walkie-talkie or a telephone to let Tietz "know of the merchandise [she] did have or didn't have." At the time of trial, Krumme could not recall specifically what she saw inside the fitting room. But Tietz testified, over Reznicek's hearsay objection, that Krumme told him no shorts were found in the fitting room. He also testified that if Krumme had reported finding shorts in the fitting room, he would not have attempted to contact Reznicek about a possible theft.

After receiving this communication from Krumme, Tietz left the video room, planning to intercept Reznicek, who was, at the time, "on the escalator and exit[ing] the store." Tietz was able to contact Reznicek in the store's parking lot, and approached Reznicek as she was talking on her cell phone and walking toward her vehicle. According to Tietz, he identified

himself as "loss prevention security" and showed her his badge. Reznicek ignored him, got into her vehicle, and drove away. Tietz wrote down the license plate number and provided it to police. Tietz testified that after a subsequent search of the store racks, the missing pairs of shorts were not found.

An officer with the Omaha Police Department testified that she telephoned Reznicek after being provided with the license plate number and a copy of the department store's surveillance video. Reznicek denied stealing anything and told the officer she had allowed Tietz to look into her bag before driving away. The officer thought the surveillance video contradicted the events as described by Reznicek and issued her a citation for shoplifting.

After the State rested its case in chief, Reznicek testified in her own defense. She admitted shopping for shorts at the department store on the evening of July 16, 2021, and taking eight or nine pairs into a fitting room. Reznicek described selecting mostly black shorts, but also several that were lighter in color. According to Reznicek, she decided the lighter shorts were too "see through." She hung the "ones [she] didn't want" on the back of the fitting room door and carried the rest with her out of the fitting room. She then began to experience a panic attack and decided to leave the store. Before doing so, she returned the shorts she was carrying to the clothing racks, while talking to her son on her cell phone.

Reznicek testified that when she got to the parking lot, she heard Tietz "screaming" at her and telling her to return to the store, but she denied that he ever identified himself as a store employee. She also denied telling the police officer that she let Tietz see inside her bag. Instead, Reznicek testified she thought Tietz could see inside her bag because he asked, "'What is that green thing in your bag?'" She also testified that when she told Tietz she did not take anything, he called her a "'thief'" and said, "'[W]e'll get you one way or the other.'" Reznicek then got into her vehicle and drove away.

The time-stamped video surveillance from July 16, 2021, was received into evidence without objection. The video depicts Reznicek selecting and carrying a total of nine pairs of shorts and then entering the fitting room area. The shorts were all on hangers, and several were brightly colored. The video shows a store employee letting Reznicek into a fitting room. After approximately 6 to 7 minutes, the video shows Reznicek leaving the fitting room carrying only four or five pairs of shorts, none of which were brightly colored.

Within 30 to 60 seconds after Reznicek left the fitting room, the video shows Krumme entering and leaving the fitting room. The video then follows Reznicek through the store and shows her talking on her cell phone while she places the shorts back on the clothing racks and leaves the store. Approximately 3 minutes after Krumme left the fitting room, the video shows Tietz approaching Reznicek in the parking lot and, in the process, fumbling and dropping what appears to be a wallet or badge. Tietz went back to retrieve the dropped item and approached Reznicek again. She turned toward him once, while still talking on her cell phone, but did not engage with Tietz and instead entered her vehicle and drove away.

The county court found Reznicek guilty as charged and imposed a $100 fine.

## District Court

Reznicek timely appealed to the Douglas County District Court. Her notice of errors claimed (1) there was insufficient evidence to sustain the conviction and (2) the county court erred in allowing inadmissible hearsay testimony by Tietz regarding the out-of-court statement made to him by Krumme.

In a written order, the district court affirmed the judgment of the county court. As relevant to this appeal, the court determined the county court did not err in admitting the hearsay statement because the exception in Neb. Rev. Stat. § 27-803(1) (Cum. Supp. 2022) applied. Reznicek filed this timely appeal, which we moved to our docket on our own motion.

## ASSIGNMENTS OF ERROR

Reznicek assigns, restated, that (1) the county court erred in admitting Tietz' testimony that Krumme told him no shorts were found in the fitting room and (2) there was insufficient evidence to find Reznicek guilty beyond a reasonable doubt.

## STANDARD OF REVIEW

[1] Apart from rulings under the residual hearsay exception, an appellate court reviews for clear error the factual findings underpinning a trial court's hearsay ruling and reviews de novo the court's ultimate determination to admit evidence over a hearsay objection or exclude evidence on hearsay grounds.[1]

## ANALYSIS

[2-4] Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.[2] For purposes of the hearsay rule, a statement is (a) an oral or written assertion or (b) nonverbal conduct of a person, if it is intended by him or her as an assertion.[3] Hearsay is not admissible unless otherwise provided for in the Nebraska Evidence Rules or elsewhere.[4]

Here, the trial court overruled Reznicek's hearsay objection and allowed Tietz to testify that Krumme told him she did not find any shorts in the fitting room. The State does not dispute that it offered Krumme's out-of-court statement for the truth of the matter asserted, but it argues the statement was properly admitted under the new hearsay exception for present sense impression in § 27-803(1).

The Nebraska Legislature enacted the hearsay exception for present sense impression in 2021,[5] and this appeal is our

---

[1] *State v. Vaughn*, 314 Neb. 167, 989 N.W.2d 378 (2023).

[2] Neb. Rev. Stat. § 27-801(3) (Cum. Supp. 2022); *Vaughn, supra* note 1.

[3] § 27-801(1).

[4] *Vaughn, supra* note 1.

[5] 2021 Neb. Laws, L.B. 57.

first opportunity to address it. In the sections that follow, we review the rationale for the exception and adopt a framework for applying it.

## HEARSAY EXCEPTION FOR PRESENT SENSE IMPRESSION

Pursuant to § 27-803(1), a statement is not excluded by the hearsay rule, even though the declarant is available as a witness, if it is a "statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." This is commonly referred to as the "present sense impression" hearsay exception,[6] and it has been recognized by federal courts and other jurisdictions for decades.[7]

[5] The language of § 27-803(1) is identical to the language of Fed. R. Evid. 803(1). When a Nebraska Evidence Rule is substantially similar to a corresponding federal rule of evidence, Nebraska courts will look to federal decisions interpreting the corresponding federal rule for guidance in construing the Nebraska rule.[8]

The hearsay exception for present sense impression is generally understood to have three distinct requirements: (1) The statement must describe or explain the event perceived, (2) the declarant must have in fact perceived the event described, and (3) the description must be substantially contemporaneous with the event in question.[9] One legal treatise explains the rationale for the exception this way:

> Generally, statements that fit within the present sense impression exception are viewed as trustworthy because:

---

[6] See, generally, 31A C.J.S. *Evidence* § 478 (2020).

[7] See *id*. (citing cases). See, also, Unif. Rules of Evidence 64(4)(a) and (b) (1953); A.L.I., Model Code of Evidence, Rule 512(a) (1942).

[8] *State v. Stevens*, 290 Neb. 460, 860 N.W.2d 717 (2015).

[9] See, e.g., *U.S. v. Ruiz*, 249 F.3d 643 (7th Cir. 2001); *State v. Prather*, 429 S.C. 583, 840 S.E.2d 551 (2020); *State v. Spinks*, 239 W. Va. 588, 803 S.E.2d 558 (2017). See, also, 31A C.J.S., *supra* note 6 (citing cases).

(1) there is no loss of memory; (2) there is little or no time for calculated misstatement; and (3) they are usually made to one who has equal opportunity to observe and check misstatements. The theory supporting the present sense impression exception is that substantial contemporaneity of the event and the statement negates the likelihood of memory deficiencies or deliberate misstatements. Its use is limited to statements made while the witness is perceiving an event or condition or immediately thereafter. If the statement describes something that happened at an earlier time, it does not fit within this exception and will not be admitted as a present sense impression. The party offering the evidence must show that the declarant perceived the event or condition, but it does not matter whether the declarant is available to testify at trial.[10]

Another legal treatise compares the exception for present sense impression to the more familiar "excited utterance" exception:

Like all hearsay exceptions and exclusions other than admissions, present sense impressions and excited utterances require that the declarant have firsthand knowledge, which can sometimes be proved entirely by the statement. These two exceptions otherwise differ in a number of important respects. First, no exciting event or condition is required for present sense impressions. Second, while excited utterances "relating to" the startling event or condition are admissible, present sense impressions are limited to "describing or explaining" the event or condition perceived. Tighter correspondence between observation and statement is appropriate given the theory underlying the present sense impression exception. Although fabrication and forgetfulness are reduced by the absence of time lapse between perception and utterance, the lack

---

[10] 2 Barbara E. Bergman & Nancy Hollander, Wharton's Criminal Evidence § 6:19 at 176-78 (15th ed. 1998).

of a startling event makes the assumption of spontaneity difficult to maintain unless the statements directly pertain to perception. Third, although the time within which an excited utterance may be made is measured by the duration of the stress caused by the exciting event, statements of present sense impression may be made only while or "immediately after" the declarant "perceived" the event or condition. This shortened period is also consistent with the weaker guarantee of trustworthiness of the present sense impression. While principle might seem to call for a limitation to exact contemporaneity, some allowance must be made for the time needed for translating observation into speech. Thus, the appropriate inquiry is whether sufficient time elapsed to have permitted reflective thought.[11]

When discussing the hearsay exception for present sense impression, both federal and state courts have articulated rationales similar to those expressed by these legal commentators.[12]

The requirement of immediacy between the perception and the statement lies at the heart of the present sense impression exception,[13] and trial courts should determine whether any

---

[11] 2 McCormick on Evidence § 271 at 382-85 (Robert P. Mosteller ed., 8th ed. 2020).

[12] See, e.g., *U.S. v. Dean*, 823 F.3d 422, 427 (8th Cir. 2016) (rationale of present sense impression exception is that "'substantial contemporaneity of event and statement minimizes unreliability due to defective recollection or conscious fabrication'"), quoting *U.S. v. Hawkins*, 59 F.3d 723 (8th Cir. 1995); *State v. Dessinger*, 958 N.W.2d 590, 600 (Iowa 2021) (rationale behind present sense impression exception is that declarant has no opportunity to fabricate statement if statement is made during or "'immediately'" after event); *Knudson v. Dir., N.D. Dept. of Transp.*, 530 N.W.2d 313 (N.D. 1995) (reason for exception is that substantial contemporaneity of event and statement negates likelihood of memory deficiencies and deliberate misstatements).

[13] See, generally, *id.*; 31A C.J.S., *supra* note 6.

lapse of time in a particular case renders the statement unreliable.[14] Rather than adopt a per se rule regarding the interval of time, courts view the issue on a case by case basis,[15] with the primary considerations being whether the declaration is substantially contemporaneous with the event in question[16] and whether the declarant had the opportunity to reflect on the event prior to making the statement.[17] As explained by the Supreme Court of North Dakota:

> There is no per se rule indicating what interval is too long between a person's perception of an event and the person's subsequent statement describing that event. . . . The proper inquiry is "whether sufficient time elapsed to have permitted reflective thought." . . . Ordinarily, whether a statement is substantially contemporaneous with an event is a fact question. . . . However, when the evidence is such that reasonable minds can draw but one conclusion, the issue becomes one of law.[18]

[6,7] Based on the plain language of § 27-803(1) and the foregoing authority, we now hold that three requirements must be met for a statement to be admissible under the hearsay exception for present sense impression: (1) The declarant must have personally perceived the event or condition described, (2) the declaration must be an explanation or description of the event or condition, and (3) the declaration must be

---

[14] See 2 Bergman & Hollander, *supra* note 10.

[15] See, 31A C.J.S., *supra* note 6; David F. Binder, Hearsay Handbook, 4th §§ 8:1 and 8:2 (2022-23 ed.). See, also, *Hawkins, supra* note 12; *U.S. v. Mejia-Velez*, 855 F. Supp. 607 (E.D.N.Y. 1994) (admitting 911 emergency service calls made 3 minutes and 16 minutes after shooting as present sense impressions); *U.S. v. Campbell*, 782 F. Supp. 1258 (N.D. Ill. 1995) (admitting 911 emergency service call made after defendant left scene of shooting).

[16] 31A C.J.S., *supra* note 6, § 479.

[17] *Id*., § 480.

[18] *Knudson, supra* note 12, 530 N.W.2d at 317 (citations omitted).

substantially contemporaneous with the event or condition described.[19] When determining whether a declaration and an event or condition were substantially contemporaneous, a trial court should consider whether sufficient time elapsed to have permitted reflective thought.[20]

Applying this framework to Krumme's statement, we find no error in affirming the trial court's decision to overrule Reznicek's hearsay objection and allow Tietz to testify about Krumme's statement that no shorts were found in the fitting room.

### Krumme Declaration Was Present Sense Impression

On appeal, we do not understand Reznicek to dispute that Krumme personally perceived the event or condition she described to Tietz (the absence of shorts in the fitting room) or to dispute that Krumme's declaration was describing that event or condition. Instead, Reznicek argues the State failed to prove the requirement that Krumme's declaration was substantially contemporaneous with the event or condition being described. More specifically, Reznicek argues the evidence at trial did not establish "the time between Krumme['s] viewing the dressing room and [her] then relaying that information to Tietz."[21] We disagree.

The declaration, as testified to by Tietz, was that Krumme told him she found no shorts inside the fitting room. While no witness testified to the number of minutes, if any, that elapsed between when Krumme looked inside the fitting room and when she communicated what she saw to Tietz, there is considerable circumstantial evidence on that issue.

---

[19] See, e.g., *Ruiz, supra* note 9; *Prather, supra* note 9; *Spinks, supra* note 9. See, also, 31A C.J.S., *supra* note 6 (citing cases).

[20] See 2 McCormick on Evidence, *supra* note 11.

[21] Brief for appellant at 13.

There is direct testimony, supported by video surveillance, that Krumme looked inside the fitting room immediately after Reznicek left the room. And there is testimony that shortly after looking inside the fitting room, Krumme contacted Tietz by either walkie-talkie or telephone to report what she observed. Tietz testified that he received the communication from Krumme while Reznicek was on the escalator leaving the store and in sufficient time to enable him to leave the video room and make contact with Reznicek in the parking lot. Time stamps on the surveillance footage indicate that approximately 3 minutes elapsed from when Krumme entered the fitting room to when Tietz contacted Reznicek in the parking lot.

The only reasonable inference from this evidence is that, at most, no more than 3 minutes elapsed from the time Krumme perceived the condition inside the fitting room to the time she described that condition to Tietz. We thus find no merit to Reznicek's contention that the evidence was insufficient to establish how much time elapsed between the perceived event and the declaration. Moreover, Reznicek has not argued, either in the lower courts or on appeal, that a lapse of 3 minutes or less cannot support a finding that the statement was substantially contemporaneous with the event or condition being described.

On this record, we agree with the district court that Krumme's declaration fell withing the hearsay exception for present sense impression in § 27-803(1), and we find no error in the ultimate determination to admit Krumme's declaration over Reznicek's hearsay objection.

### Evidence Sufficient to
### Sustain Conviction

In her second assignment, Reznicek argues the evidence at trial was insufficient to sustain her conviction. Her appellate briefing on this assignment, however, is limited to arguing that without Krumme's hearsay statement, the evidence

was insufficient to support the conviction. Because we have already concluded that Krumme's statement was admissible, we need not further examine this assignment of error.[22]

## CONCLUSION

For the foregoing reasons, we affirm the decision of the district court.

AFFIRMED.

---

[22] See *Brush & Co. v. W. O. Zangger & Son*, 314 Neb. 509, 991 N.W.2d 294 (2023) (appellate court not obligated to engage in analysis not needed to adjudicate controversy before it).