IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

EASTON V. EASTON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

ANDREW D. EASTON, APPELLEE,

V.

JESSICA R. EASTON, NOW KNOWN AS JESSICA R. SAYRE, APPELLANT.

Filed April 16, 2024.    No. A-23-088.

Appeal from the District Court for Douglas County: JAMES M. MASTELLER, Judge. Affirmed.

Jodie Haferbier McGill and Deziree N. Medina, of McGill Law, P.C., L.L.O., for appellant.

Patrick A. Campagna, of Campagna Law, P.C., L.L.O., for appellee.

PIRTLE, Chief Judge, and RIEDMANN and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Jessica R. Easton, now known as Jessica R. Sayre, appeals the Douglas County District Court's order modifying custody, parenting time, and child support. Jessica has identified 13 assignments of error which can be broken down into three general categories: evidentiary issues, issues regarding custody and parenting time, and other more general issues. For the reasons stated herein, we affirm.

## II. STATEMENT OF FACTS

### 1. BACKGROUND

Jessica and Andrew were married in December 2011 and had two children during the course of their marriage: Amour, born in 2011, and Andrew, born in 2014. Jessica is an anesthesiologist and serves as an assistant professor at the University of Nebraska Medical Center.

- 1 -

Andrew is employed as a consultant, which involves him supporting, leading, and teaching people who train teachers. Prior to that, Andrew was employed as a high school teacher and then as a personal learning collaborator providing direct training to all the teachers in a specific school district. A dissolution decree was entered in July 2017 wherein the district court awarded the parties joint legal and physical custody of the children with Jessica awarded final decisionmaking authority for health and medical decisions involving the children. In November 2018, the district court modified the parties' regular parenting time and summer and holiday schedules pursuant to a stipulation by the parties.

### 2. CURRENT COMPLAINT FOR MODIFICATION

According to Jessica, in the spring of 2021, the children began expressing a desire to change from their current school district to the Elkhorn school district. Jessica testified that she emailed Andrew regarding the children's desire to change schools, but he would not consider it.

After the parties unsuccessfully attempted mediation, Jessica filed a complaint to modify and a request to change the children's school in August 2021. This complaint was later amended, and Jessica's operative complaint requested sole legal and physical custody of the children, or in the alternative, final decisionmaking authority regarding the children's education, and permission for the children to change schools. Jessica alleged that the following material changes in circumstances existed: Andrew was no longer working or coaching for the children's current school district; the children had expressed a desire to attend school in the Elkhorn school district to be closer to their neighborhood friends; Andrew failed to provide stability for the minor children; the children had experienced bullying at their current school which had not been adequately addressed; Andrew frequently scheduled activities and travel for the children during Jessica's parenting time; and Andrew failed to coparent with Jessica.

In his answer and counterclaim, Andrew requested sole legal and physical custody of the children and alleged that Jessica failed to abide by the legal custody provisions in the decree, failed to coparent, and engaged in behavior that was contrary to the children's best interests. Andrew alleged that a material change in circumstances had occurred including that Jessica had failed to abide by the legal custody provisions of the modification order and parenting plan; had used her decisionmaking authority regarding medical decisions in a manner inconsistent with the children's best interests; and had failed to coparent with Andrew or respect his rights as a joint custodial parent. Andrew further alleged that Jessica had engaged in behavior contrary to the children's best interests by putting the children in the middle of decisions involving legal custody such as school placement, undermining his custodial rights by using the children as a go-between, and failing to work cooperatively with him to make decisions in the children's best interests.

Prior to trial, the parties stipulated that the children would complete the 2021-2022 school year at their current school. Although the parties agreed to a July 2022 trial date to avoid disrupting the children's education, the trial was continued over Jessica's objection. After the trial was continued, Jessica contacted Hannah Reilly, Amour's therapist, seeking advice about the best way to inform Amour about the continuance. Despite receiving advice from Reilly to keep the conversation positive, Jessica stated that the conversation with Amour became emotional and "did not go well."

## 3. TRIAL

Trial was held over 4 days in November and December 2022. Testimony was adduced from witnesses including Reilly, Jessica, Andrew, and Amour.

### (a) Hannah Reilly Testimony

The first witness called was Reilly. Reilly testified that in 2017, Amour began individual therapy for severe separation anxiety. Although Amour stopped attending therapy at some point thereafter, she resumed therapy in February 2022. When Amour resumed therapy, she was distraught about not being allowed to change to the Elkhorn school district and about time spent at Andrew's house. Reilly testified that Amour feels very close to Jessica and her stepfather but feels distant from Andrew. During one session, Amour reported that Andrew had "pinned her and her brother against a hard surface like a wall or a door and then also against a bunk bed, the top level of the frame." Reilly reported the incident to child protective services as she was required to do, but later learned that "nothing happened as a result of the report."

Reilly testified that "[Amour] feels pretty isolated and unhappy in her neighborhood in [her current] school district and in her current school. And she has a lot of negative, hopeless thoughts about being at [Andrew's] house and that her parents will never get along and always hate each other." Reilly further testified that Amour is very sure of herself and knows what she wants and Reilly did not feel that Amour's desire to attend school in Elkhorn was the result of pressure or influence from either parent.

Regarding whether changing schools was in Amour's best interests, Reilly stated that "[Amour] wishes to go to her Elkhorn neighborhood school. And I feel like it would benefit her mental health if [Andrew] and [Jessica] both supported that wish, because she wants to feel inclusion, connection, which is kind of what every kid her age really wants to feel." Further, Reilly expected that, if Amour's request to change schools was denied, Amour would experience "increased hopelessness, increased loss of power and control, probably increased pessimism and a feeling of isolation" and, if unaddressed, those feelings could develop into a more severe mental illness such as major depressive disorder.

Reilly stated that Amour had also discussed her concerns about testifying in this case. During one session, Amour became concerned about testifying because Andrew told her to be careful about what she said because her testimony would be recorded and warned Amour that Reilly would "spill all your secrets." Despite this, Reilly stated that Amour was confident about what she wanted and what she was going to share with the judge.

### (b) Motion for Partial Directed Verdict

Following Reilly's testimony, Jessica requested a partial directed verdict on the issue of the children changing schools on the basis that the decision was a medical decision as evidenced by Reilly's testimony. Jessica argued that because she had final decisionmaking authority on medical decisions, the topic was already decided and therefore moot. The district court overruled her motion.

## (c) Children's Education

The evidence established that the children have attended their current school district since they were 3 years old. However, according to Jessica, in 2021, the children expressed a desire to switch from their current school to the Elkhorn school district. Jessica testified that she did not influence the children's desire to change schools, but after conducting her own research, she supported their preferences and validated their feelings. Jessica further testified that, based on her observations, the children were not happy at their current school; that Amour's grades reflected a lack of effort; that the children lacked close friends; that both children had previously been bullied which had not been appropriately addressed by the school; and that neither party had a connection with the children's current school district at the time the complaint for modification was filed.

The children's current school is 25 to 30 minutes from Jessica's home in Elkhorn. Jessica testified that the children would be 5 to 7 minutes from their school in the Elkhorn school district and that the Elkhorn school would be more "equidistant" for both parties. However, Andrew testified that he had recently moved into the children's current school district and the children's school was located only 1 mile from his house.

Andrew testified that after the children spent a week-long vacation with Jessica, their school preference changed, and that Jessica influenced the children's desire to switch schools. Andrew also testified that the children exhibited frustration about his unwillingness to discuss their preference to change schools, which the children perceived to be a lack of support. Andrew testified that both children's report cards show that they demonstrated proficiency in their grade level, skill, or concept. He acknowledged that Amour tends to breeze through assignments on the first try but noted that her grades improve after she corrects her assignments.

Jessica testified that a change in the children's school was in their best interests because it would offer them "just as good, if not better, educational opportunities [and] extracurricular activities" and that it would decrease their commute, improve their friendships with friends in their Elkhorn neighborhood, give them a sense of belonging and community, and would allow them to be closer to their extracurricular activities and appointments. However, Andrew testified that he believed it was in the children's best interests to remain at their current school. He stated that he attended the children's activities, was highly involved in the school events and his children's classrooms, and that both children had great friendships with other students at their current school. Andrew testified that he was comfortable with the children remaining in their current school because he was familiar with the staff, he and the children were involved in the school community, the children had friends and support at their school, he agreed with the teaching styles utilized by the children's school, and he was aware of the kind of education the children received due to his employment which involved direct training of the school's teachers and staff.

## (d) Best Interests

Jessica testified that she had a good relationship with both her children and that when the children have problems, she always attempts to communicate with them to come to a resolution. In her opinion, a change in custody was in the children's best interests because "Andrew puts his needs, wants, desires, and personal opinions above all else," he does not communicate with her effectively, and Andrew does not think the children "deserve or have a voice in the decisions that

are made," even decisions that "greatly impact" them. She testified that some animosity existed between Andrew and the children and that their relationship was strained.

Andrew's friends and fiancé generally testified that Andrew had a good relationship with his children, that his children appeared to be affectionate towards Andrew, that Andrew provided appropriate meals and snacks to the children, and that Andrew was consistently involved with the children's school and their activities.

### (e) Amour's In-Camera Testimony

During her in-camera testimony, Amour testified that she "hated" her current school, that she wanted to switch schools, and that she liked that the current parenting time arrangement is equal between her parents. According to Amour, after the judge expressed that he wanted her to feel comfortable talking to him and that Amour's testimony would not be disclosed to her parents, Andrew told her that "I better watch what I say because [the judge] could tell him."

### 4. DISTRICT COURT'S ORDER

In December 2022, the district court entered an order of modification that found Jessica had failed to meet her burden of proof to modify the minor children's custody. However, the court found Andrew had established that a material change in circumstances existed that affected the children's best interests due to Jessica "engaging in behavior . . . contrary to the children's best interest[s]" including "putting the children in the middle of legal custody decisions regarding schooling" and "failing to work cooperatively with [Andrew]." The district court also found that modification was in the children's best interests.

The district court found that both parties were fit and proper persons to be awarded joint legal and physical custody of the minor children and that the minor children were "growing and flourishing" in both parties' care and declined to make a change "with respect to the schedule which has been implemented successfully in both residences." However, regarding legal custody, the district court modified the decree to award Andrew final decisionmaking authority regarding decisions related to the children's education; eliminated the right of first refusal provision in the decree; ordered Jessica to pay $1,239 in monthly child support; denied Jessica's request to change the children's school; ordered that Jessica and Andrew participate in family therapy with the children; and awarded Andrew additional vacation parenting time following the week of his wedding in May 2023. Jessica has timely appealed to this court.

### III. ASSIGNMENTS OF ERROR

Jessica has identified 13 assignments of error which can be broken down into three general categories: (1) issues regarding evidence, (2) issues regarding custody and parenting time, and (3) other more general issues.

As it relates to her assignments of error on evidentiary issues, Jessica assigns that the district court erred in (a) refusing to accept into evidence Jessica's 2017 to 2023 timeline of events; (b) admitting Andrew's calendar listing the children's events and appointments into evidence over her hearsay objection; and (c) failing to consider Amour's in-camera testimony and the testimony of Amour's therapist.

Regarding issues related to custody and parenting time, Jessica asserts that the district court erred in (a) awarding Andrew final decisionmaking authority regarding the children's education based upon its finding a material change of circumstances had occurred that affected the minor children's best interests; (b) denying Jessica's request to change the minor children's school; (c) finding that Jessica failed to meet her burden of proof regarding her request to award her sole custody of the minor children; and (d) awarding Andrew certain specific vacation parenting time.

Jessica also assigns error to the following general issues: (a) failing to grant her motion for a directed verdict; (b) ordering Jessica and Andrew to participate in family therapy; and (c) making findings of fact that were inconsistent with the evidence submitted at trial.

## IV. STANDARD OF REVIEW

Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and will be affirmed absent an abuse of discretion by the trial court. *Tilson v. Tilson*, 307 Neb. 275, 948 N.W.2d 768 (2020). In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue. *Id*. When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Id*.

The admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party. *Jaeger v. Jaeger*, 307 Neb. 910, 951 N.W.2d 367 (2020). Erroneous exclusion of evidence does not require reversal if the evidence would have been cumulative and other relevant evidence, properly admitted, supports the trial court's finding. *Id.*

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *Richards v. McClure*, 290 Neb. 124, 858 N.W.2d 841 (2015). A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id*.

## V. ANALYSIS

### 1. EVIDENTIARY ISSUES

Jessica claims that the district court erred in excluding relevant evidence, admitting irrelevant evidence, and failing to consider certain evidence. Specifically, Jessica contends that the district court erred in (a) excluding from evidence her 2017 to 2023 timeline of events; (b) admitting Andrew's calendar of the children's events and appointments into evidence over her hearsay objection; and (c) failing to consider Amour's in-camera testimony and Reilly's testimony. We address each of her claims in turn.

#### (a) Exclusion of Jessica's Timeline of Events

Jessica first argues that the district court erred in excluding from evidence her 2017 to 2023 timeline of events. She asserts that the timeline she maintained tracked the parties' communication, the children's extracurricular activities, Andrew's forfeiture of his parenting time, and occasions

when Andrew did not allow Jessica to exercise her final decisionmaking authority regarding the children's medical needs. The court granted Andrew's hearsay objection to Jessica's offer of the timeline. Jessica argued during the trial, and here on appeal, that her timeline of events should have been admitted under the present sense impression exception to the hearsay rule.

As the Nebraska Supreme Court recently stated:

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. For purposes of the hearsay rule, a statement is (a) an oral or written assertion or (b) nonverbal conduct of a person, if it is intended by him or her as an assertion. Hearsay is not admissible unless otherwise provided for in the Nebraska Evidence Rules or elsewhere.

. . . .

Pursuant to § 27-803(1), a statement is not excluded by the hearsay rule, even though the declarant is available as a witness, if it is a "statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." This is commonly referred to as the "present sense impression" hearsay exception, and it has been recognized by federal courts and other jurisdictions for decades.

*State v. Reznicek*, 315 Neb. 272, 277-78, 995 N.W.2d 204, 208-09 (2023).

Here, assuming without deciding that the district court erred in excluding Jessica's timeline from evidence, Jessica testified to the information contained in the timeline and provided specific examples where Andrew allegedly denied her right to exercise her final decisionmaking authority regarding the children's medical needs, including not wanting the children to switch dentists; not wanting their son to play basketball after hurting his ankle, even though an orthopedic surgeon had cleared him to play; and not wanting Amour to participate in a track meet following an ankle injury, even though Andrew had allowed her to go hiking several days before.

Jessica also testified regarding multiple occasions when Andrew missed the children's extracurricular activities; when Andrew allowed the children to miss their activities or appointments; when Andrew forfeited his scheduled parenting time due to personal or work trips or declined to exercise his right of first refusal when Jessica had work obligations; and the parties' overall inability to communicate effectively.

We find that, because Jessica testified to the information contained in her written timeline of events, her written timeline was cumulative of her testimony. Accordingly, any error related to the court's failure to admit the timeline into evidence was harmless and did not unfairly prejudice a substantial right of Jessica. See *Jaeger v. Jaeger*, 307 Neb. 910, 951 N.W.2d 367 (2020) (admission or exclusion of evidence is not reversible error unless it unfairly prejudiced substantial right of complaining party). This claim fails.

(b) Admission of Andrew's Calendar

Jessica next argues that the district court erred in receiving Andrew's calendar, which listed the children's events and appointments, into evidence over her hearsay objection.

Erroneous admission of evidence in a bench trial is not reversible error if other relevant evidence, properly admitted, sustains the trial court's necessary factual findings; in such case, reversal is warranted only if the record shows the trial court actually made a factual determination,

or otherwise resolved a factual issue or question, through use of erroneously admitted evidence. *Schriner v. Schriner*, 25 Neb. App. 165, 903 N.W.2d 691 (2017).

Andrew's calendar included events from January 2021 until the time of trial in which Andrew documented his level of participation in the children's day-to-day activities including extracurricular activities, parenting time schedules, grocery store runs, and appointments. Jessica raised a hearsay objection to the admission of the calendar, but the court overruled her objection. Notwithstanding the admission of the calendar, Andrew's testimony included a recitation of the facts consistent with the information contained in his calendar and that testimony was admitted without objection.

Assuming, without deciding, that portions of Andrew's calendar were inadmissible hearsay, other evidence properly admitted, including his testimony that was admitted without objection, supported the district court's factual findings and there was no prejudice to the document's admission on this record. See *Jaeger v. Jaeger*, 307 Neb. 910, 951 N.W.2d 367 (2020) (admission or exclusion of evidence is not reversible error unless it unfairly prejudiced substantial right of complaining party). This claim fails.

(c) Failure to Consider Testimony

Jessica next assigns that the district court erred when it failed to consider (i) Amour's in-camera testimony and (ii) Reilly's expert testimony.

*(i) Amour's In-Camera Testimony*

Jessica contends that the district court erred in failing to consider Amour's in-camera testimony and her stated preference to change schools. She argues that had the district court properly considered Amour's testimony, it would not have awarded final decisionmaking authority regarding education to Andrew or denied her request for the children to change schools.

The Nebraska Supreme Court has stated that

"the wishes of a child are not controlling" in determinations of child custody. Trial courts should consider a variety of factors that bear on the best interests of the child. Due consideration of these factors will determine whether finding a material change in circumstances is justified.

But "if a child is of sufficient age and has expressed an intelligent preference, the child's preference is entitled to consideration," alongside other factors. The amount of consideration will depend on the child's age and ability to give reasons for his or her preference.

*Jaeger v. Jaeger*, 307 Neb. at 920, 951 N.W.2d at 376.

Here, Amour testified regarding her preferred school choice, her reasons for that choice, her relationship with both parents and her stepparents, her participation in activities, Andrew's attempts to interfere with her testimony, her allegations that Andrew physically abused her and her brother, and the lack of food available to them while in Andrew's care. Jessica contends that if the court had properly considered this testimony, the court would have found that it was not in the children's best interests to deny her request for sole custody, it would not have awarded Andrew

final decisionmaking authority regarding the children's education, and it would have granted her request for the children to change schools. We disagree.

Although the district court's written order did not specifically reference Amour's in-camera testimony, that does not mean that the district court failed to consider it. Further, a child's wishes are not determinative of issues of custody. *Jaeger v. Jaeger, supra* (child's wishes are not controlling in determinations of child custody). The court's order recognized that the children had been in their current school district since they were 3 years old; they were doing well academically, socially, and otherwise at their current school; and that the educational benefits and consistency required that they be maintained in the current school district where the programs had been designed to complement one grade after another using systems and procedures which were taught, in part, by Andrew to those teachers.

Based on our de novo review of the record, we find that the district court simply accepted Andrew's version of the facts and we give weight to the district court's findings when the evidence is in conflict. In child custody cases, where credible evidence is in conflict on material issue of fact, an appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Tilson v. Tilson*, 307 Neb. 275, 948 N.W.2d 768 (2020). This argument fails.

### (ii) Reilly's Testimony

Jessica also argues that the court failed to consider Reilly's testimony. Jessica argues that the court ordered the children to remain in their current school despite Reilly's testimony, including her opinion that supporting Amour's desire to change schools was in Amour's best interests and that there were risks associated with not allowing Amour to choose where to attend school.

Similar to her argument that the court failed to consider Amour's testimony, Jessica is simply attacking the weight given to Reilly's testimony regarding allowing Amour to choose which school to attend and the benefits of allowing her to change schools. Determining the weight that should be given expert testimony is uniquely the province of the fact finder. *Wayne L. Ryan Revocable Trust v. Ryan*, 308 Neb. 851, 957 N.W.2d 481 (2021). See also *Simons v. Simons*, 312 Neb. 136, 978 N.W.2d 121 (2022). Where credible evidence is in conflict on material issues of fact, a reviewing court may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another. *Wayne L. Ryan Revocable Trust v. Ryan, supra*. A reviewing court gives significant weight to a trial court's credibility determination. *Id*.

After conducting a de novo review of the record, while affording weight to the trial court's observation of the witnesses, including Reilly's testimony and her opinions, we find no abuse of discretion in the district court's ultimate resolution of the conflict in evidence governing the choice of school for these children in favor of Andrew.

### 2. ISSUES RELATED TO CUSTODY AND PARENTING TIME

Regarding issues related to custody and parenting time, Jessica contends that the district court erred in (a) modifying legal custody to award Andrew final decisionmaking authority regarding the children's education; (b) denying Jessica's request to change the minor children's

school; (c) finding that Jessica failed to meet her burden of proof regarding modification of custody; and (d) awarding Andrew certain specific vacation parenting time.

### (a) Awarding Andrew Final Decisionmaking Authority Over Children's Education

Jessica contends that the district court erred in awarding Andrew final decisionmaking authority regarding the children's education. Specifically, she contends that the court erred in finding that: (i) a material change in circumstances affecting the children's best interests existed and (ii) it was in the children's best interests to award Andrew the final decisionmaking authority over educational decisions involving the children.

### (i) Material Change of Circumstances Affecting the Children's Best Interests

We first address Jessica's claim that the district court erred in finding that a material change in circumstances affecting the children's best interests existed. The district court found that "a material and substantial change in circumstances unanticipated since the entry" of the November 2018 modification order existed which affected the minor children's best interests including, but not limited to, Jessica engaging in behavior that was contrary to the children's best interests such as putting the children in the middle of legal custody decisions regarding their education and "failing to work cooperatively with [Andrew]." Jessica argues that there was no evidence that she failed to cooperatively parent with Andrew or that she placed the children in the middle of decisions regarding their education.

As the Nebraska Supreme Court stated in *Lindblad v. Lindblad*, 309 Neb. 776, 788-89, 962 N.W.2d 545, 554-55 (2021):

> Ordinarily, custody and parenting time of a minor child will not be modified unless there has been a material change in circumstances showing that the best interests of the child require modification. Modifying a custody or parenting time order requires two steps of proof. First, the party seeking modification must show by a preponderance of the evidence a material change in circumstances that has occurred after the entry of the previous custody order and that affects the best interests of the child. Second, the party seeking modification must prove that changing the child's custody or parenting time is in the child's best interests. . . .
>
> Generally speaking, a material change in circumstances is the occurrence of something which, had it been known to the dissolution court at the time of the initial decree or prior modification, would have persuaded the court to decree differently. We have explained that proof of a material change in circumstances is the "threshold inquiry in a proceeding on a complaint to modify, because issues determined in the prior custody order are deemed preclusive in the absence of proof of new facts and circumstances." The rationale for limiting modifications of custody and parenting time to only those necessitated by a material change in circumstances is to avoid extensive and repetitive litigation and unnecessary, potentially harmful fluctuations in the child's life. Simply put, a custody or parenting time order will not be modified absent proof of new facts and circumstances arising since the order was entered that affect the best interests of the child.

Here, Andrew testified that Jessica put Amour in the middle of legal custody issues by influencing Amour's decision to change from her current school district to the Elkhorn school district and by filing a motion to have Amour testify at trial. Andrew also testified that Jessica did not discuss the issue of the children changing schools with him prior to involving the children, including touring Elkhorn schools with the children and meeting with school staff and students. He contends that these actions biased the children's opinions toward changing schools. Andrew further testified that Jessica's actions caused the children to feel as if Andrew did not support their preferences or decisions. Andrew testified that he believed Amour had internalized Jessica's emotions regarding her choice of schools and Amour's desire to change schools was not her own decision. Andrew also stated that he did not want Amour placed in the middle of the parties' issues by having her testify at the trial.

Andrew also testified that Jessica took Amour to therapy only when there were upcoming events related to the custody modification, such as depositions or the trial, both of which were scheduled for the summer of 2022. Amour had three therapy sessions in March 2022 after which her therapy sessions were paused because Amour was in a better place emotionally and they had used all five of the allotted sessions under the Employee Assistance Program.

Andrew also testified that Jessica was generally unwilling to accommodate changes to the parenting time schedule, that she planned activities for the children on nights when Andrew exercised his right of first refusal causing conflict with the children wanting to go to his house for the evening, that she blocked his phone number and other numbers belonging to his family members to prevent them from talking to Amour on Amour's cellphone, and that she changed the children's dentist without Andrew's consent.

Contrary to Jessica's claim that there was no evidence that she failed to cooperatively parent or that she placed the children in the middle of decisions regarding their education, we find the record refutes that contention. As to that evidence summarized in part above, while giving weight to the fact that the trial court heard and observed the witnesses, we find no error in the district court accepting Andrew's version of the facts rather than Jessica's or in finding that the evidence was sufficient to find a material change in circumstances had occurred that affected the children's best interests. See generally *State on Behalf of Maddox v. Matthew E.*, 23 Neb. App. 500, 873 N.W.2d 208 (2016) (ongoing conflict can constitute material change in circumstances). This assignment of error fails.

*(ii) Best Interests*

We next address Jessica's claim that the court erred in finding it was in the children's best interests to award Andrew the final decisionmaking authority involving the children's education.

As the Nebraska Supreme Court stated in *Jones v. Jones*, 305 Neb. 615, 631, 941 N.W.2d 501, 513 (2020):

> When determining the best interests of the child in the context of custody, a court must consider, at a minimum, (1) the relationship of the minor child to each parent prior to the commencement of the action; (2) the desires and wishes of a sufficiently mature child, if based on sound reasoning; (3) the general health, welfare, and social behavior of the child; (4) credible evidence of abuse inflicted on any family or household member; and (5) credible evidence of child abuse or neglect or domestic intimate partner abuse. Other

- 11 -

relevant considerations include stability in the child's routine, minimalization of contact and conflict between the parents, and the general nature and health of the individual child. No single factor is determinative, and different factors may weigh more heavily in the court's analysis, depending on the evidence presented in each case. The one constant is that the child's best interests are always the standard by which any custody or parenting time determination is made.

In *State on behalf of Maddox S. v. Matthew E., supra*, this court addressed a similar issue wherein the district court split final decisionmaking authority between the parents. This court stated:

> Similarly in the case before us, we give deference to the district court's attempt to find a workable solution to best protect [the child's] best interests. Because of the power struggle between the parties, the district court was not willing to favor one parent over the other in allocating parental responsibilities or parenting time. Although still encouraging mutual decisionmaking, the court's specific division between the parties as to who has final say on the larger child-rearing decisions splits the parenting "control" and will hopefully minimize conflict between the parties.

*Id*. at 520, 873 N.W.2d at 220. Here, the parties acknowledge that they do not communicate effectively. And after the parties were unable to agree, either on their own or through mediation, on whether the children should switch schools, the district court devised a workable solution to best protect the children's best interests. The court continued final decisionmaking authority for health and medical decisions with Jessica but awarded Andrew final decisionmaking authority for decisions related to the children's education. Based on Jessica's experience as a physician, the district court found that the children's best interests were better served by allowing Jessica to make final decisions regarding medical issues in the event the parties were unable to agree. Likewise, Andrew had extensive experience working with area schools and providing direct training to teachers within the same school district in which the children are enrolled. Given the parties' history in this case, and Andrew's knowledge and experience regarding the educational system in the area, we cannot say that the district court abused its discretion in finding that modifying legal custody to award Andrew final decisionmaking regarding the children's education was in the children's best interests.

### (b) Failure to Award Jessica Sole Legal and Physical Custody

Jessica next contends that the district court erred in failing to award her sole legal and physical custody of the parties' minor children. She contends that she met her burden of establishing that a material change of circumstances existed affecting the best interests of the children and that modification was in the children's best interests. She argues that the evidence established that Andrew made decisions contrary to the children's best interests, that he abused the children, that he failed to provide them with adequate food, that he refused to allow Jessica to exercise her final decisionmaking authority, that he failed to exercise all his parenting time awarded under the decree, that he no longer worked for children's current school district, that the

children preferred to switch schools, and that the parties' communication was inconsistent, difficult, and strained.

Jessica further argues that the evidence established that she has been the children's primary caregiver and that she took greater responsibility for performing parental duties. She asserts that she provided numerous examples of when Andrew failed to attend the children's activities, failed to get the children to their activities, and forfeited his parenting time. And, in addition, that she provided evidence showing the children's well-being was in question when they were in Andrew's care and that he failed to allow her to exercise her final decisionmaking authority over health and medical decisions involving the children.

As we previously stated, when evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Tilson v. Tilson*, 307 Neb. 275, 948 N.W.2d 768 (2020). Here, although Jessica testified regarding her perceptions of Andrew's inadequacies in caring for the children and in his dealings with her, much of which we summarized above, we recognize that Andrew provided conflicting testimony as to Jessica's allegations of material changes in circumstances affecting the children's best interests. Giving weight to the fact that the trial court heard and observed the witnesses and made credibility determinations, and following our thorough review of the record, we find that the district court did not abuse its discretion in finding that Jessica failed to satisfy her burden to prove a material change in circumstances affecting the children's best interests or that modification of the parenting plan was in the children's best interests.

(c) Denial of Request to Change Schools

Jessica also contends that the district court erred in denying her request to change the children's school. She generally argues that the evidence supported a determination that changing schools was in the children's best interests and that the decision to change schools, as reflected by the testimony of Amour's therapist, was a medical decision for which she has final decisionmaking authority.

In denying Jessica's request to change the children's school, the district court provided that Jessica failed to meet her burden of proof, specifically finding that the children had been attending their current school "since they were each three (3) years old, respectively. The minor children are doing well academically, socially, and otherwise within [their current] [e]lementary school system." The court further stated that it was persuaded that the educational benefits and consistency provided at their current school required that the children "be maintained in the [current district], where the educational programs have been designed to complement one grade after the other, utilizing systems and procedures which were taught, in part, by [Andrew] to the [district's] teachers."

Based on our de novo review of the record, the district court accepted Andrew's version of the facts over Jessica's related to whether a change in the children's school was in their best interests. Although Jessica testified regarding the potential advantages of the children switching schools, Andrew testified that the children's current school offered the children more benefits and consistency than the Elkhorn School District. And although we recognize Reilly offered an opinion that the child's stated preference of schools should be considered here, we likewise recognize that

even considering that input, the parties offered conflicting testimony on the benefits of the children remaining in their current school as opposed to changing schools. After weighing that evidence, the court determined that it was in the children's best interests to remain in their current school. On this record, we do not find that the district court abused its discretion in accepting one version of the facts over another and finding that the children's best interests required that the children remain in their current school. This assignment of error fails.

### (d) Award of Specific Vacation Time

Jessica next argues that the district court erred in its award of miscellaneous vacation time to Andrew because it was not requested in his counterclaim and his request did not arise until Andrew testified on the last day of the trial. She argues that the prior parenting plan gave her priority for choosing vacation dates in odd-numbered years and awarding the specific dates denied her of her previous award of vacation time priority.

The district court's order provided that Andrew was to have parenting time with the minor children from Thursday, May 25, 2023, at 5 p.m. until Thursday, June 1, 2023, at 8 a.m. in order to allow the children to attend Andrew's out-of-state wedding. This parenting time has been completed and is now moot. See *Becher v. Becher*, 302 Neb. 720, 925 N.W.2d 67 (2019) (mother's assignments of error concerning the award of specific summer parenting time to father were moot where period during which parenting time was awarded had passed).

### 3. OTHER GENERAL ISSUES

### (a) Motion for Directed Verdict

Jessica next assigns that the district court erred in denying her motion for a directed verdict on the issue of the school choice because she had previously been granted final decisionmaking authority for medical decisions and the testimony during the trial showed that the decision to change the children's school was a medical decision because of the potential detrimental impact on Amour's mental health if she was not allowed to change schools.

In *Johnson v. Johnson*, 20 Neb. App. 895, 900, 834 N.W.2d 812, 817 (2013), this court stated:

> For purposes of appellate review, a motion to dismiss and a motion for directed verdict are treated similarly. See *American Central City v. Joint Antelope Valley Auth.*, 281 Neb. 742, 807 N.W.2d 170 (2011) (motion to dismiss at close of evidence has same legal effect as motion for directed verdict). In the context of a motion to dismiss made at the close of all of the evidence in a proceeding on an application to modify a dissolution decree, the Nebraska Supreme Court has noted that in a court's review of evidence on a motion to dismiss, the nonmoving party is entitled to have every controverted fact resolved in his or her favor and to have the benefit of every inference which can be reasonably drawn therefrom, and where the plaintiff's evidence meets the burden of proof required and the plaintiff has made a prima facie case, the motion to dismiss should be overruled. See *Knaub v. Knaub*, 245 Neb. 172, 512 N.W.2d 124 (1994). If, on a motion to dismiss, there is any evidence in favor of the nonmoving party, the case may not be decided as a matter of law. *Id.* When a trial court sustains a motion to dismiss, it resolves the controversy as a matter

of law and may do so only when the facts are such that reasonable minds can draw only one conclusion. *Id.*

In short, Jessica's narrow theory here is that because Reilly opined that denying the child's choice of schools could ripen into a medical issue for her, it rendered the choice of schools a medical one rather than an educational one. We reject this logic and contention. Because the choice of schools on the record was not a medical one, we reject Jessica's theory that she was entitled to a directed verdict as a matter of law on the basis that she was entitled to choose the children's school in accord with the prior decree. This assignment fails.

### (b) Family Therapy

Jessica next assigns that the district court erred in requiring the parties to participate in family therapy. She argues that neither party requested this relief in the pleadings or in their proposed relief offered at trial and that the issue was not brought up until Andrew's testimony on the final day of the trial. She asserts that this new, last-minute request violated her due process right to provide any input or evidence as to why family therapy was unnecessary or inappropriate in this case.

The district court's modification order provided that Andrew and Jessica "shall participate in family therapy with the minor children, with a mutually agreeable family therapist, at a frequency recommended by said therapist. The parties shall continue to participate in said family therapy until the family therapist advises the parties that further therapeutic services are no longer needed."

Although Andrew did not specifically request that the court order family therapy in his counterclaim, he requested "any other further relief the Court deems appropriate under the circumstances." Although Jessica asserts that she was denied her due process rights because the issue of family therapy was not raised in the pleadings, Jessica did not object to that testimony, she did not request a continuance of the trial in order to address that testimony, and she did have the opportunity to cross-examine Andrew regarding the necessity of family therapy. Under these circumstances, we find that the district court did not abuse its discretion in ordering the parties to participate in family therapy with the children.

### (c) Inconsistent Findings of Fact

Jessica assigns that the district court erred in making findings of fact that were inconsistent with the evidence submitted at trial. She generally argues that the evidence presented during the trial clearly supported her claims and requests and refuted Andrew's allegations. For the reasons set forth earlier in this opinion, and giving weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts over the others, we find no abuse of discretion in the district court accepting Andrew's version of the facts over Jessica's. This assignment of error fails.

### VI. CONCLUSION

For the reasons stated herein, we affirm the district court's order in its entirety.

AFFIRMED.